Larry Gene SNIDER and Kandace Snider Lindsay, Independent Co-Executors of the Estate of J. O. Snider, Deceased, Appellants,

v.

Rosalie SNIDER, Appellee.

No. 20394.

Court of Civil Appeals of Texas, Dallas.

Jan. 16, 1981.

Rehearing Denied Feb. 27, 1981.

C. J. Wofford, Jr., Dallas, for appellants.

James J. Hartnett, Dallas, for appellee.

Before AKIN, CARVER and STOREY, JJ.

CARVER, Justice.

Rosalie Snider, a widow, sued the Independent Co-executors of her deceased husband's estate for an accounting between his separate estate and their community estate. The proceeding expanded to include an accounting between the widow's separate estate and community estate and the issue of whether the widow should receive an allowance. The trial court made numerous findings and rendered a judgment in favor of the widow against the executors for $69,366.89, including (1) the widow's share of the excess of debits to her husband's separate property over the debits to the widow's separate property, plus (2) a widow's allowance of $13,750.00, about which no complaint is made. The executors appeal a limited number of these findings as to debits made to the husband's separate estate. For the errors which we set out in this opinion, we reduce the judgment in favor of

the widow to $44,603.46 and affirm, with costs assessed one-half to the widow and one-half to the executors.

■ The executors first complain that the trial court held that, the cost of improvements to the homestead (which was the separate property of the husband) was the measure of reimbursement in favor of the community rather than the enhancement in value to the separate property such costs generated, contrary to *Burton v. Bell*, 380 S.W.2d 561 (Tex.1964). We disagree. The widow testified, without objection or contradiction, that the cost of the improvements produced an equal enhancement of the value. We hold that her testimony supports the trial court's award and that the award is consistent with *Burton v. Bell*. We overrule this complaint.

■ The executors urge that to allow the widow to recover reimbursement for improvement of the husband's separate property, used as a homestead, and to allow the widow to continue to use and occupy the homestead at the same time, is an inequitable remedy. While the case of *Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620 (1935) requires generally that the court fashion an "equitable remedy" as between the community and separate estates in order that reimbursements due either estate may be accomplished, *Ogle v. Jones*, 143 S.W.2d 644 (Tex.Civ.App.—Waco 1940, writ ref'd), specifically holds that "equity" does not prevent the widow from occupying the separate property homestead while at the same time seeking her share of community-provided improvements thereon as reimbursement. We overrule this complaint.

■ The executors further argue that the trial court should have made the widow's share of the community reimbursement for improvements to the husband's separate property a charge or a lien on the improved separate property rather than award a cash recovery from his estate. We cannot agree. The imposition of a charge or lien would have forced the widow to elect between present reimbursement and continued occupancy of the homestead.

While *Dakan* authorizes such charge, or lien, if it is the only practical or equitable means available to the court, the imposition of that remedy is left to the court's discretion in light of the nature and extent of the community and separate property available to accomplish the required reimbursement. We do not find in this record any abuse of the trial court's discretion. Both the community estate and the separate estate of each party appear to be sufficiently substantial to discharge any reimbursement due without a forced, or sacrifice, sale.

■ The executors also contend that the trial court erred in allowing the community estate reimbursement for taxes and insurance on the husband's income-producing interest in a farm, and for interest paid in the outstanding debt. The executors assert that the taxes, interest, and insurance (totaling $10,935.14) were proper expenditures by the community because the community enjoyed the income of the separate property as well as the income tax deductions for these expenses. We agree. Our record does not reflect the actual income that the community enjoyed from this farm, but does reflect that the community did deduct from reportable income the taxes, the interest, and the insurance premium as costs of producing income. In *Cadwell v. Dabney*, 208 S.W.2d 127, 129 (Tex.Civ.App.—Austin 1948, writ ref'd n. r. e.), where the husband had paid taxes on his separate property from community funds and the wife sought reimbursement, the court stated that, "the income from this property would be community and it would be but fair that the community pay taxes." In *Ames v. Ames*, 188 S.W.2d 689, 690 (Tex.Civ.App.—Galveston 1945, no writ) in a similar circumstance, the court stated as follows:

[T]he husband is the manager of the community and, absent fraud against the rights of the wife, he can, as such manager, layout the community funds as he sees fit. As a matter of law it was no fraud against his wife for appellant to pay the taxes in question with community funds. Indeed it seldom happens that the husband comes into possession of separate funds. The income from his separate

property is community. Since, under the facts of this case, the husband as manager of the community estate, had the absolute right to pay the taxes in question with community funds, he did not become answerable, upon dissolution of the marital status, to his former wife in an amount equal to half of the sum of the taxes so paid.

Upon the same considerations, we hold that since no fraud by the husband is urged, since there was no income that was "separate," and since the community did benefit from the income tax deductions, the taxes, interest, and insurance on the husband's separate property paid by the community does not entitle the community to reimbursement for $10,935.14.

■ The executors also argue that the trial court erred in holding that the community estate was entitled to reimbursement for a payment of an annual installment of principal debt in the amount of $3,462.64 due on the husband's separate property farm in 1972 because the payment was made from a checking account that existed before the marriage of these parties. We cannot agree. While the record reflects that the husband's bank account did exist before the parties' marriage on October 3, 1972, and that the husband drew a check on this account 13 days later to pay the current installment of principal due on his farm, the record fails to reflect the amount of the account just prior to the marriage, and the amount and character of deposits and withdrawals in the intervening days until the check in question cleared the account. Absent this data, the balance in the husband's bank account when the check in question was presented and paid cannot be shown to be "separate property" in the whole or traceable part. Further, absent the same data, we are compelled to conclude that the account balance was merely possessed by a spouse during the marriage and thus presumed to be community property. Tex. Fam.Code Ann. § 5.02 (Vernon 1975).

■ The executors also urge that the trial court erred in holding that the deceased husband's *savings* account in the Mercantile Bank (which pre-existed the marriage) was

found by the trial court to belong to the community estate because of subsequent deposits and withdrawals by the community. On the date of the marriage, the balance in the account was $27,642.45. Upon dissolution of the community by the husband's death, the balance was $35,809.80. The account grew by *interest* from time to time, as well as by new deposits, and was reduced by withdrawals from time to time. The witness Wofford testified that an additional deposit of $10,000.00 of separate funds of the husband was made after the marriage and that the remaining deposits, as well as withdrawals, were made by the community. The passbook for this account was introduced into evidence and supports the separate character and balance of the account on the date of marriage. Between the marriage on October 3, 1972, and October 20, 1972, no interest was earned and no deposits were made, but withdrawals reduced the balance to $19,642.45. Between October 20, 1972, and April 23, 1973, there were entries of earned interest, deposits of unknown character, and withdrawals, but the balance was never below $19,642.45. On April 23, 1973, a separate property deposit of $10,000.00 was made and the identifiable separate property interest in the account became $19,642.45 plus $10,000.00 or $29,642.45. Subsequent interest earned, deposits, and withdrawals to the date of the husband's death never reduced the account balance to or below $29,642.45. We hold that this record traces and identifies the husband's separate interest in the Mercantile savings account to the extent of $29,-642.45 with the remainder of the account being deemed community for want of tracing or identity. *See McKinley v. McKinley*, 496 S.W.2d 540 (Tex.1973); *Schmidt v. Huppmann*, 73 Tex. 112, 11 S.W. 175 (1889); *Peterson v. Peterson*, 595 S.W.2d 889 (Tex. Civ.App.—Austin 1980, no writ); *Harris v. Ventura*, 582 S.W.2d 853 (Tex.Civ.App.—Beaumont 1979, no writ); *Sibley v. Sibley*, 286 S.W.2d 657 (Tex.Civ.App.—Dallas 1955, writ dism'd).

■ The executors next contend that the trial court erred in finding that a debt due the deceased husband by Snider Building

Corporation in the amount of $8,885.24 was all community property, when $3,228.87 of the debt existed prior to the marriage, and was therefore separate property. We agree. The deceased husband was an officer and principal stockholder of the Snider Building Corporation. The records of the company were introduced into evidence and reflect, without contradiction, that the debt in question had accumulated since 1969 and had reached a balance of $3,228.87 by the date of the marriage. Thereafter, credits to the account always exceeded debits and the balance on hand at marriage was thus a traceable and identifiable part of the balance on hand at the husband's death. *See Harris v. Ventura*. Accordingly, we hold that $3,228.87 of the debt owed by Snider Building Corporation to the deceased husband was his separate property.

■ The executors finally complain of the trial court's holding that a cash dividend of $7,006.09, declared by Snider Building Corporation after the husband's death, was community property. The widow does not dispute that the shares in Snider Building Corporation were the separate property of the deceased husband, nor that the shares vested in someone else on the husband's death, nor that ordinarily a dividend would belong to the shareholder holding the shares at the time of the declaration of a dividend by the boards of directors of the corporation. She does assert, however, that since these particular dividends were declared by the corporation to represent dividends that should have been paid for the years 1974, 1975, and 1976 (during the existence of the marriage), the dividends for these years should be held to be community property, although actually declared and paid after the community was dissolved by the death of the husband. We disagree. The record reflects that Snider Building Corporation had accumulated earnings to a greater extent than Internal Revenue regulations permit without a serious tax consequence. The board of directors chose to reduce such accumulation (and eliminate the tax consequences) by declaring a dividend. The labeling of such declaration divi-

dend made in 1979 to be "1974," "1975," and "1976" dividends was a sleight-of-hand by the board of directors to escape a tax consequence and did not change the fact that the dividend was payable to the holder of the stock in 1979, *i. e.*, the deceased husband's successor in title and not the community estate of the husband and wife. Prior to the actual declaration of a dividend, all the accumulation of surplus in the corporation merely enhanced the value of the shares held by the husband as his separate property and the community had no claim thereto. *Johnson v. First National Bank of Fort Worth*, 306 S.W. 927 (Tex.Civ.App.—Fort Worth 1957, no writ). We hold that the community estate is not entitled to any reimbursement because of this dividend.

Since the judgment in favor of the widow is excessive to the extent our opinion reduces the debits to the husband's separate property previously found in the trial court, we modify the judgment of the trial court by reducing the amount due to the widow to $44,603.46 with interest at the rate of 9 percent per annum from the 26th day of November 1979—the date of judgment in the trial court as per Tex.R.Civ.P. 434. As so modified, the judgment is affirmed. Costs in the trial court and in this court are assessed one-half to the widow and one-half to the executors.