Rena GIBSON, Appellant,

v.

C. E. GIBSON, Appellee.

No. 1399.

Court of Civil Appeals of Texas, Tyler.

March 26, 1981.

Calvin C. Otte, Dallas, for appellant.

Kerri Fields, Fields, Fields & Hardee, Athens, for appellee.

McKAY, Justice.

This is an appeal from a divorce decree in which the trial court found certain property to be the separate property of one of the spouses.

Prior to his marriage to appellant Rena Gibson on June 12, 1976, appellee C. E. Gibson purchased a piece of property in Missouri. That property was sold after the marriage for $8,000, with $5,500 paid at closing and $2,500 to be paid later. Appellee deposited the $5,500 into his personal account in Missouri, but later transferred that amount to the couple's joint checking account in Richardson, Texas (joint

account). At the time of this transfer, the joint account contained an indeterminate amount of separate funds belonging to appellant, (though there was testimony that such sum was negligible), as well as the proceeds from several social security checks received by each party during the marriage.

Three or four months after the Missouri property was sold, the Gibsons purchased a house and lot in Mesquite, Texas, for $9,900. Title was placed in the names of both parties. A note was executed by both parties to finance part of the cost, with appellee's separately owned truck and appellant's small insurance policy used as collateral. Appellee borrowed $990 from one of his daughters as a down payment, and the remainder of the purchase price ($5,500) came from the joint account.

It is appellee's contention that the $5,500 cash payment was part of the proceeds from the sale of his Missouri property. He also testified that the balance of the amount due him for the sale of his property ($2,500) was applied, when received, on the note for the house and lot in Mesquite. Additionally, appellee's daughter Rita had borrowed money from him prior to his marriage to appellant, and appellee claims that the $1,700 repaid on that loan was used to pay on the note. Appellant testified that six monthly payments made on the note, at $135 each, came from funds in the joint account apart from the sum claimed by appellee to be his separate property. The Mesquite realty was sold on July 29, 1977, for $17,500, and the proceeds of the sale were placed in the joint account.

Approximately one month later, the couple purchased a house and lot at Cedar Creek for $6,500, using cash from the joint account. At the same time, they bought a $5,300 Dodge Aspen Station Wagon. To cover $1,400 of the purchase price, appellee traded in his truck which he owned when married. The remainder of the sum was paid in cash, again coming from the joint account. The titles to the real property and the car were in the names of both parties.

Certain improvements were made on the Cedar Creek property, including the addition of a small room and the purchase of a metal building, carpet, furniture and a septic tank. The cost of these items totalled $2,300 and was paid out of the joint account. Appellee contends that his separate funds, i. e., the proceeds from the sale of the Mesquite property, were used to finance the improvements, as well as to purchase the Cedar Creek property and the station wagon.

The trial court found that the Cedar Creek property and the car were the separate property of appellee. Appellant brings one point of error in which she attacks the trial court's characterization of the property on the grounds that (1) there was insufficient evidence to overcome the community presumption as to property possessed by the parties upon dissolution of the marriage; (2) appellee failed to show that he never intended to make a gift of the property in question to appellant when title was placed in the names of both parties; and (3) the Mesquite property was purchased with commingled funds, and an installment note executed on the credit of the community.

A deed from a third party which is in the names of both husband and wife raises a *community* presumption which is rebuttable and "operates only in the absence of satisfactory proof to the contrary." *Sparks v. Humble Oil & Refining Co.*, 129 S.W.2d 468, 469 (Tex.Civ.App.-Texarkana 1939, writ ref'd); *Von Hutchins v. Pope*, 351 S.W.2d 642, 645 (Tex.Civ.App.-Houston 1961, writ ref'd n. r. e.) No presumption of gift to either spouse arises in such a situation, and therefore appellee was not prejudiced by failing to rebut it. Furthermore, no allegations of gift were made at trial and no evidence presented on that point, thereby precluding appellant from raising the argument on appeal.

The heart of appellant's attack on the trial court's judgment is that the separate and community property of Mr. and Mrs. Gibson became so commingled as to defy appellee's attempt to trace his separate funds into the Cedar Creek property and the station wagon. The Texas Family

Code dictates that "(p)roperty possessed by either spouse during or on dissolution of marriage is presumed to be community property." Tex.Fam.Code Ann. Art. 5.02 (Vernon 1975). To overcome this presumption, the party asserting separate ownership must clearly trace the original separate property into the particular assets on hand during the marriage, *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex.1973), but when the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the burden is not discharged and the statutory presumption that the entire mass is community controls its disposition. *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex.1973); *Tarver v. Tarver*, 394 S.W.2d 780, 783 (Tex.1965). A spouse must prove separate ownership to the court by "clear and convincing" evidence or by "clear and satisfactory" evidence. *Newland v. Newland*, 529 S.W.2d 105, 107 (Tex.Civ.App.-Ft. Worth 1975, writ dism'd).[1] When tracing separate property, it is not enough to show that separate funds, *could have been* the source of a subsequent deposit of funds. *Latham v. Allison*, 560 S.W.2d 481, 486 (Tex.Civ.App.-Ft. Worth 1978, writ ref'd n. r. e.).

Courts dealing with the tracing of separate property commingled with community funds have required varying degrees of particularity in identifying separate property. See 6 St. Mary's L. J. 234 (1974). Many Texas cases have been strict in demanding a "dollar for dollar" accounting of separate funds used to purchase an asset, the ownership of which is in dispute. E. g., *Schmeltz v. Gary*, 49 Tex. 49 (1878); *Latham v. Allison*, supra; *West v. Austin National Bank*, 427 S.W.2d 906 (Tex.Civ.App.-San Antonio 1968, writ ref'd n. r. e.); *Stanley v. Stanley*, 294 S.W.2d 132 (Tex.Civ.App.-Amarillo 1956, writ ref'd n. r. e., cert. den'd 354 U.S. 910, 77 S.Ct. 1296, 1 L.Ed.2d 1428).

Certain other courts have been more lenient in their treatment of the tracing prob-

lem. The philosophy prompting these decisions was expressed in *Farrow v. Farrow*, 238 S.W.2d 255, 257 (Tex.Civ.App.-Austin 1951, no writ): "One dollar has the same value as another and under the law there can be no commingling by the mixing of dollars when the number owned by the claimant is known." In *Sibley v. Sibley*, 286 S.W.2d 657 (Tex.Civ.App.-Dallas 1935, writ dism'd), the court allowed appellee to trace her separate property through a series of transactions, including the deposit of the proceeds from a sale of her separate realty into a joint account containing a substantial amount of community funds and separate funds belonging to the other spouse. According to *Sibley*, community funds will be presumed to have been drawn out before separate funds from a joint bank account.

In still other cases, spouses have been permitted to distinguish their separate funds commingled in a bank account with community money by proving that community withdrawals, e. g. for living expenses, equalled or exceeded community deposits. For example, in *Coggin v. Coggin*, 204 S.W.2d 47, 52 (Tex.Civ.App.-Amarillo 1947, no writ), evidence was presented to show that income from the wife's property totalled approximately $1,000 per year, while family living expenses were $200–$500 monthly. The court found that such community funds could not have been used to pay for the property in question since they had already been depleted in paying for the living expenses. See *DePuy v. DePuy*, 483 S.W.2d 883, 888 (Tex.Civ.App.-Corpus Christi 1972, no writ).

Even if this court were to employ the most lenient of the tracing rules set out above, we would have to hold that appellee failed to produce sufficient evidence to trace his separate property. No explicit "dollar for dollar" accounting of appellee's separate funds was made as it passed through the joint account. While the record tends to indicate that the Gibsons'

---

1. The court in *Newland* seems to hold that a judgment need be supported only by a preponderance of the evidence, with the "clear and convincing" standard serving only as an "admonition to the judge to exercise great caution in weighing the evidence." *Newland v. Newland*, supra at 108. See O. Speer, Texas Family Law § 15.26 (5th ed. 1976).

monthly income, standing alone, was inadequate to purchase the disputed property, it is possible that some community funds may have been used, in addition to separate funds, to buy the car and the Cedar Creek realty. Appellee made no attempt to prove the precise amount of community funds in the joint account at the time separate funds were deposited. Neither was evidence presented by appellee to quantify community deposits and withdrawals at the time the purchases in question were made.[2] Appellee testified that all community funds were depleted during the month to pay for living expenses; however, appellee admitted to having no personal knowledge of how much was actually spent since appellant paid the monthly bills. No testimony was elicited from appellant as to monthly community expenditures.

For these reasons we hold that appellee has not presented sufficient evidence to prove his sole ownership of the station wagon and Cedar Creek property. We therefore reverse the judgment and remand the cause to the trial court.

---

**2.** Appellee might have introduced bank records to prove these sums as in *Lindsey v. Lindsey,* 564 S.W.2d 143 (Tex.Civ.App.-Austin 1978, no writ).