**Terri L. ANDERSON, Appellant,**

v.

**Cleo GILLILAND, Appellee.**

**No. 05–82–01408–CV.**

Court of Appeals of Texas, Dallas.

July 11, 1984.

Rehearing Denied Aug. 27, 1984.

Before CARVER, GUILLOT and STEWART, JJ.

STEWART, Justice.

This is an appeal from a suit by a remainder devisee, Terri L. Anderson ("Anderson"), under the will of her father, Lawrence Gilliland (the "deceased"), against Cleo Gilliland ("Gilliland"), the widow of Lawrence Gilliland and the executrix of his estate. For the reasons below, we sustain both Anderson's point of error and Gilliland's cross-point.

On a former appeal in this court, this cause was reversed and remanded to the probate court to determine the amount of reimbursement owed the deceased's estate for permanent improvements to Gilliland's separate real property that were paid for with community funds. *Anderson v. Gilliland*, 624 S.W.2d 243 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). Upon remand, the probate court found that $7,237.89 was expended by Gilliland out of her separate funds to make the down payment for a house to be constructed on her separate land. It is undisputed that the balance of construction costs was paid with $13,000 from a mortgage loan made by Gilliland and the deceased.

Further, the trial court held that enhancement in value was the correct measure of the amount of reimbursement due the community estate and, therefore, based

on the uncontroverted evidence that the permanent improvements enhanced the value of the separate property by $54,000, the trial court found that $34,560 should be reimbursed to the community (only sixty-four percent of the $54,000 since the court concluded that thirty-six percent of the money used for improvements, or $7,237.89, was Gilliland's separate property).

In her point of error, Anderson contends that the trial court erred in finding that the down payment for the construction of the house on Gilliland's separate real property was from the separate funds of Gilliland because Gilliland failed to overcome the presumption that all property owned by either spouse during or upon dissolution of marriage is community property. *McKinley v. McKinley*, 496 S.W.2d 540 (Tex. 1973); *Tarver v. Tarver*, 394 S.W.2d 780 (Tex.1965). On the other hand, Gilliland contends that the down payment, made in three separate installments, came from the proceeds of the sale of her separate property.

Gilliland testified that, prior to her marriage to the deceased, she owned real property in Rowlett, Texas. She sold 11.9 acres to the City of Dallas. She placed the money from the sale in a separate savings account in First National Bank of Garland. However, Gilliland failed to prove how much she received for the tract of land sold or the exact date of the sale, although she did testify that the land was sold about a year before she issued the checks in 1968 for the down payment on the house. Money from this separate savings account was transferred to a checking account when the Gillilands began the construction of their home in July, 1968. There were two checking accounts, and Gilliland deposited paychecks in both. She testified that she had transferred the funds from her separate savings account into one of the checking accounts around August of 1968. The payments made toward the down payment from the checking account, and included by the trial court in the total sum of $7,237.89, were made in July and November of 1968.

The record does not show when the separate funds were transferred, how much was transferred, or whether the checking account contained any community funds when the transfer was made. If Gilliland's paychecks were still in the checking account, they were presumably the source of the funds expended for the home because there is a presumption that community funds are paid out first. *Harris v. Ventura*, 582 S.W.2d 853, 855–56 (Tex.Civ.App.—Beaumont 1979, no writ); *Sibley v. Sibley*, 286 S.W.2d 657 (Tex.Civ. App.—Dallas 1955, writ dism'd).

Gilliland asserts that the findings of fact made by the trial court should be sustained if there is some evidence of probative value to support them and if they are not against the great weight and preponderance of the evidence. *Anderson v. Havins*, 595 S.W.2d 147 (Tex.Civ.App.— Amarillo 1980, no writ). However, even under the most lenient tracing rules, Gilliland has failed to produce sufficient evidence to trace her separate property into the construction of the home; consequently, she has failed as a matter of law to overcome the presumption that community funds were used for the down payment on the house. *Gibson v. Gibson*, 614 S.W.2d 487 (Tex.Civ.App.—Tyler 1981, no writ). Thus, we hold that the trial court erred in finding that $7,237.89 was paid from Gilliland's separate funds and sustain Anderson's point of error as to the character of the $7,237.89.

In a cross-point, Gilliland contends that the trial court erred in rendering judgment based on a theory that the amount of reimbursement due the decedent's estate is measured by the enhanced value of Gilliland's separate property at the time of decedent's death rather than by the amount of community funds actually expended in improving Gilliland's separate property. Gilliland asserts that the correct measure is the *lesser* of the amount of community funds expended on improvements or the amount of the enhanced value attributable to the funds. It is undisputed that the total cost of the house was $20,237.89—the

$7,237.89 down payment (which we have held was paid from community funds) plus the $13,000.00 from a community mortgage loan. Gilliland argues that this lower figure ($20,237.89) should be used as the correct measure of the amount to be reimbursed. We hold that when, as here, enhancement value exceeds costs advanced, the community's right to reimbursement is limited to the costs of the improvements.

■ In this case, the right to reimbursement is not in issue. Anderson has met her burden to plead and prove that community expenditures were made and that they are reimbursable. *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex.1982). When funds from the community estate are used to place permanent improvements upon the separate property of one of the spouses, those improvements become attached to the soil and are not divisible in kind because one of the joint owners of the improvements has no interest in the land upon which they have been erected. "Hence results the rule that the community estate must be reimbursed for the cost of the buildings erected by joint labors or funds upon the separate property of one of the spouses, and, in effect, this vests the improvement in that spouse, and entitle[s] the other to one-half of the cost." *Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620, 628 (1935), citing *Furrh v. Winston*, 66 Tex. 521, 1 S.W. 527, 529 (1886), quoting *Rice v. Rice*, 21 Tex. 58, 66 (1858); *see also Burton v. Bell*, 380 S.W.2d 561, 565 (Tex.1964).

■ However, the community is entitled to an accounting only if the improvement enhanced the value of the separate property, *Villarreal v. Villarreal*, 618 S.W.2d 99, 101 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Gleich v. Bongio*, 128 Tex. 606, 99 S.W.2d 881, 885 (Tex.Comm'n App.1937), Under the facts in *Dakan*, the court observed:

It is no equity to permit the surviving spouse ... to demand repayment in full of the exact amount advanced, together with interest thereon, and to be enforced by the foreclosure of a lien upon such property, perhaps to the complete sacrifice of the interest held by other heirs or devisees therein.

*Dakan*, 83 S.W.2d at 628. The court thereafter held that the amount recoverable for community improvements is limited to the amount by which the property's value was enhanced as a result of the improvements placed on it. *Id.; see also, Clift v. Clift*, 72 Tex. 144, 10 S.W. 338, 341 (1888) ("*only so much* should be allowed for the improvements as the value of the property has been increased thereby") (emphasis added).

In *Lindsay v. Clayman*, 151 Tex. 593, 254 S.W.2d 777, 781 (1952), the supreme court stated that the amount of reimbursement is measured, not by original costs, but by the enhancement in value of the property as a result of the improvements. Relying on *Dakan*, the court thus appears to convert the *Dakan* language from enhancement in value being a limitation on the right of reimbursement to its being the sole measure of reimbursement. However, in *Lindsay* the plaintiff had pleaded and had proved costs but had neither pleaded nor proved enhancement value, and the correct interpretation of that holding is that there is no right of reimbursement at all unless enhancement value is pleaded and proved. *Lindsay* is not in conflict with *Dakan* because both elements necessarily must be alleged and proved to determine the proper measure of reimbursement in a given case. *Villarreal*, 618 S.W.2d at 101.

Relying on *Lindsay*, the court in *Harris v. Royal*, 446 S.W.2d 351 (Tex.Civ.App.—Waco 1969, writ ref'd n.r.e.), held that enhancement value was the proper measure of reimbursement, but in that case, enhancement value was *less* than costs; hence, the result is not in conflict with our holding in this case.

We recognize that our decision conflicts with the holding on this point in *Cook v. Cook*, 665 S.W.2d 161 (Tex.App.—Fort Worth 1983, no writ), but we respectfully decline to adopt the reasoning in that case. To allow the community estate a share in the appreciation in value of separate real estate is to grant owner's rights to an estate which has no ownership interest.

■ Whether proved enhancement value at the time of partition is the proper measure of reimbursement when it *exceeds* proved costs has yet to be addressed by the supreme court. We hold that when both costs and enhancement value are pleaded and proved, the lesser of the figures is the proper measure of reimbursement. *Pruske v. Pruske,* 601 S.W.2d 746 (Tex.Civ. App.—Austin 1980, writ dism'd); *Trevino v. Trevino,* 555 S.W.2d 792 (Tex.Civ.App.— Corpus Christi 1977, no writ); *Girard v. Girard,* 521 S.W.2d 714 (Tex.Civ.App.— Houston [1st Dist.] 1975, no writ).

This rule is consistent with the language of *Rice,* that the non-owner is entitled to reimbursement of one-half of the costs of improvements, and of *Dakan,* that his claim for reimbursement is limited by the amount that the value of the property has been enhanced at the time of partition by the improvements. Neither of these cases has been disapproved nor overruled by the supreme court.

■ Under the facts in this case as pleaded and proved, because the enhanced value of the separate property due to the community improvements ($54,000) exceeds the costs of those improvements ($20,237.89), we hold that the maximum reimbursable amount to which the deceased's estate is entitled is one-half of the costs, or $10,118.95. Accordingly, Gilliland's cross-point of error is sustained.

The record reflects that the principal balance due on the house mortgage on the day of deceased's death was $10,154.00. Anderson concedes that one-half of this amount should be charged against the amount to be reimbursed for community improvements. Therefore, the judgment of the lower court is reversed and judgment is here rendered that the trial court enter $5,041.95 in the inventory of the deceased's estate as reimbursement for community improvements to Gilliland's separate real estate.

Judgment reversed and rendered with instructions. All costs in this court and in the trial court are taxed one-half to Anderson and one-half to Gilliland.

GUILLOT, Justice, dissenting.

I respectfully dissent. Although I agree with the majority's disposition of Anderson's point of error, I do not agree with the disposition of Gilliland's cross-point. The value of enhancement attributable to improvements made during the marriage to the separate property was determined to be $54,000.00. The trial court correctly decided that the value of enhancement, as opposed to cost of the improvements, should be the measure for reimbursement to the community. However, the trial court found that only $34,560.00 should be reimbursed to the estate (sixty-four percent of the $54,000.00 since thirty-six percent of the improvements or $7,237.89, the down payment, was found by the court to be separate property). The majority correctly decided that the $7,237.89 used for the down payment was community property. Thus, the entire cost of the improvements to the property ($20,237.89) was paid by the community, since the $13,000.00 loan secured by the mortgage was undisputedly community property. Gilliland argues that the cost of improvements should be reimbursed to the community since that amount is less than the amount of enhancement. I would hold that $54,000.00, the value of enhancement due to community improvements, should be reimbursed to the community estate.

The right to reimbursement is an equitable one. *Vallone v. Vallone,* 644 S.W.2d 455 (Tex.1982); *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935). The value of reimbursement has been defined in various ways. The concept of recompense was first recognized in Louisiana with the amount of compensation being the value added to the separate estate by community-erected improvements. *Depas v. Riez,* 2 La.Ann. 30 (La.1847). The court in *Depas* said that, if the value added to the separate estate failed to exceed the community-funded cost, the community would have, in effect, to bear the loss. The court also said that "whatever be the present value of the improvements, the recompense due the

community for them cannot exceed their cost." *Depas,* 2 La.Ann. at 44. *See generally* Smith, *Principles of Reimbursement Among the Marital Estates,* in ADVANCED FAMILY LAW COURSE (1982) (citing Baker, *Reimbursement,* in MARRIAGE DISSOLUTION IN TEXAS (1978)). Thus, the court in *Depas* took a cost or enhancement, whichever is less, approach.

Early Texas cases recognized the right to reimbursement, upon dissolution of the marriage, when the community estate had benefited the separate estate of one of the spouses. The courts measured the value in terms of cost of the particular improvements. *Furrh v. Winston,* 66 Tex. 521, 1 S.W. 527 (1886); *Rice v. Rice,* 21 Tex. 58, 66–67 (1858).

The concept of enhancement as a measure of reimbursement appeared in cotenancy cases involving partition. The opinions clearly held that enhancement was the only measure of reimbursement to the estate that had benefitted the land. *Lynch v. Lynch,* 130 S.W. 461 (Tex.Civ.App.—1910, writ ref'd). The enhancement measure also arose in trespass to try title situations in which the parties who lost the land were still entitled to receive the value of improvements they had placed thereon. Enhancement was the measure applied. *Bemrod v. Wright,* 273 S.W. 938 (Tex.Civ.App. —Amarillo 1925, no writ).

In the landmark case of *Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620 (1935), the Supreme Court said that, in order to adjust the equities between respective parties in the settlement of estates, "the community estate must be reimbursed for the cost of the buildings erected by joint labors or funds upon the separate property of one of the spouses...." *Dakan,* 83 S.W.2d at 628. The Supreme Court cited *Furrh,* 1 S.W. at 529. In the next paragraph, the Supreme Court went on to say that the amount of recovery to the community is limited to the amount of enhancement of the property by virtue of the improvement. *Dakan,* 83 S.W.2d at 628. The language in *Dakan* has been interpreted to mean that the measure of reimbursement is which-

ever is less—enhancement or cost. *Hale v. Hale,* 557 S.W.2d 614, 615 (Tex.Civ.App.— Texarkana 1977, no writ); *Trevino v. Trevino,* 555 S.W.2d 792 (Tex.Civ.App.—Corpus Christi 1977, no writ).

The trend since *Dakan,* however, has been to measure reimbursement in terms of enhancement rather than cost. *Burton v. Bell,* 380 S.W.2d 561 (Tex.1964); *Lindsay v. Clayman,* 151 Tex. 593, 254 S.W.2d 777 (Tex.1952); *Cook v. Cook,* 665 S.W.2d 161, 165–66 (Tex.App.—Fort Worth 1983, no writ); *Snider v. Snider,* 613 S.W.2d 8 (Tex.Civ.App.—Dallas 1981, no writ) (implicit in the holding); *Harris v. Royal,* 446 S.W.2d 351 (Tex.Civ.App.—Waco 1969, writ ref'd n.r.e.).

I think, however, that the best rule for the trial court to apply would be the one that favors the most equitable result. The trial court sits in equity when it divides the marital estate, either upon divorce or death of a spouse. It has the power to adjust the equities and has all of the evidence before it. In the instant case, the trial court found that enhancement was the appropriate measure of reimbursement—an equitable remedy—and we should not disturb that ruling in absence of an abuse of discretion. *Vallone v. Vallone,* 644 S.W.2d 455, 459 (Tex.1982). Accordingly, I would overrule Gilliland's cross-point.

Like the majority, I would hold that the $7,237.89 spent on the down payment was community property, making the entire improvements ($20,237.89) community property. However, I would hold that the amount of reimbursement to the community estate should be $54,000.00, the amount of enhancement to the property due to community improvements. Accordingly, I would hold that one-half of $54,000.00, or $27,000.00, should be the amount of reimbursement to the decedent's estate. Since Anderson concedes that one-half of the mortgage balance due ($5,077.00) should be charged against the amount to be reimbursed for community improvements, I would reverse and render judgment that the trial court enter $21,923.00 in the inventory of decedent's estate as reimbursement

for community improvements to Gilliland's separate real estate.