PRISCILLA L. DAVIS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

THOMAS C. DAVIS AND KAREN J. DAVIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 31386-84, 36032-85.     Filed June 11, 1987.

*Ronald M. Mankoff, G. Tomas Rhodus*, and *Ronald A. Stein*, for the petitioner in docket No. 31386-84.
*Harry E. Bartel, David C. Bakutis*, and *William Davis*, for the petitioners in docket No. 36032-85.
*Deborah A. Butler*, for the respondent.

SWIFT, *Judge*: In timely statutory notices of deficiency, respondent determined the following deficiencies in Federal income tax for 1979 in these consolidated cases:

| Docket No. | Petitioner(s) | Deficiency |
|---|---|---|
| 31386-84 | Priscilla L. Davis | $647,518 |
| 36032-85 | Thomas C. Davis | 662,262 |
| | and Karen J. Davis | |

After concessions and severance of an issue raised in docket No. 36032-85, the sole issue for decision is whether the manner in which the community property of petitioners Priscilla Davis and Thomas C. Davis was divided constitutes a nontaxable division of the community property or a taxable sale thereof.

## FINDINGS OF FACT

Many of the facts have been stipulated and are so found. Petitioners were residents of Fort Worth, Texas, at the time the petitions herein were filed.

Petitioners Priscilla L. Davis (Priscilla) and Thomas Cullen Davis (Cullen) were married on August 29, 1968. On July 30, 1974, Priscilla and Cullen separated. The following day, Priscilla filed for divorce against Cullen in the 324th Judicial District Court in Tarrant County, Texas (hereinafter referred to as the Tarrant County District Court or District Court). After lengthy and contested proceedings, Priscilla and Cullen were divorced on April 23, 1979.

Under Texas law, each spouse owns a vested one-half interest in all community property of the marriage.[1] Priscilla and Cullen were unable to agree on the value and distribution of the community property. The Tarrant County District Court set forth its determination of the community property and the fair market value thereof in the divorce decree (Finding of Fact No. 12) as follows:

| Community assets and liabilities[2] | Value |
|---|---|
| Cash | $692,058 |
| Receivables | 3,229,114 |
| Investments | 6,447,743 |
| Reimbursement due community from Cullen's separate estate | 3,929,273 |
| Personal assets (e.g., furniture, art objects, home furnishings) | 1,964,368 |
| Total community assets | 16,262,556 |

[1]Tex. Fam. Code Ann. secs. 5.01(b) and 5.02 (Vernon 1975).

[2]We have set forth only the total value for each category of assets and liabilities reflected in the findings of the Tarrant County District Court.

| Community assets and liabilities | Value |
|---|---|
| Total community liabilities | ($9,312,557) |
| Net community estate | 6,949,999 |
| Value of each spouse's one-half interest in net community estate | 3,475,000 |

The community asset reflected above as a "Reimbursement due community from Cullen's separate estate" arose from the following circumstances. During the pendency of the divorce proceedings, Cullen incurred legal expenses (not related to the divorce) totaling $3,688,311, which he paid from community-owned bank accounts. Also during the divorce proceedings, Cullen paid his friend (and current wife) Karen Masters Davis and her father funds from community bank accounts totaling $240,962. In the divorce proceedings, the Tarrant County District Court determined that under Texas law, the community estate had an equitable claim against Cullen for reimbursement of those amounts totaling $3,929,273.[3]

The Tarrant County District Court entered its divorce decree on April 23, 1979. The District Court determined that the community estate should be divided equally between Priscilla and Cullen. Due to the animosity between the parties, the District Court determined that it was unwise to allow them to continue joint ownership of any community asset. In its findings of fact, conclusions of law, final divorce decree, and judgment, the District Court made the following distribution of the property of Priscilla and Cullen.

In its Finding of Fact No. 13, the District Court found that—

Taking into account the age and education of the parties, their ability, present and future, to work and earn money, the duration of the marriage, the nature and extent of the separate estates of each party, all other facts and circumstances proper to be considered and supported by admissible evidence in the record of this trial, and disregarding the matter of fault on the part of either party with regard to problems and conflicts in their marital relationship, a fair, just, and equitable division of their community estate is as follows:

[Priscilla] shall receive:

(a) All personal bank accounts, checking or saving, presently standing in her name.

---

[3]The reimbursement was calculated as follows: $3,688,311 plus $240,962 equals $3,929,273.

(b) The automobile in her possession which has been used for her personal use.

(c) All household pets and the horse presently in her possession.

(d) All items of personal belongings presently in her possession, such as clothing, furs, and jewelry.

(e) A personal money judgment against [Cullen] in the amount of $3,475,000, representing one-half of the value of the net community estate, less the amounts advanced to her under court orders during the pendency of this cause, which advancements are in the total amount of $134,182, and are now found by the court to be advancements against her interest in the net community estate, leaving a net personal judgment against [Cullen] in the amount of $3,340,818.

[Priscilla] shall be solely responsible for the payment of any notes or other indebtedness incurred by her since July 31, 1974.

[Cullen] shall receive:

All property; real, personal, or mixed; separate or community, standing in his name or in the name of [Cullen] and [Priscilla] and not otherwise disposed of in the judgment to be rendered. Such award includes all retirement benefits, bonus and pension benefits accruing due to past or present employment or from the ownership of capital stock in any corporation. [Cullen] shall be solely responsible for the payment of any indebtednesses owing by him or by him and [Priscilla], except for the indebtednesses expressly imposed against [Priscilla] hereinabove. [Cullen] shall be solely responsible for the payment of any federal income tax, assessments, or penalties imposed for the calendar year 1978 or prior years.

In paragraphs (2) and (6) of its decree of divorce and final judgment (as distinguished from the findings of fact portion of its final decree), the District Court made the following award to Priscilla:

(2) [Priscilla] is awarded as her sole and exclusive property the following items:

(a) All personal bank accounts, checking or saving, presently standing in her name.

(b) The automobile in her possession which has been used for her personal use.

(c) All household pets and the horse presently in her possession.

(d) All items of personal belongings presently in her possession, such as clothing, furs, and jewelry.

\*    \*    \*    \*    \*    \*    \*

(6) In lieu of any and all interest in the community estate of the parties and of any claim by [Priscilla] against the separate estate of [Cullen] and in satisfaction of all claims against [Cullen] by [Priscilla] and her attorneys for attorneys fees and expenses of litigation, there is awarded

to [Priscilla] and against [Cullen] the following personal money judgments:

(a) A personal money judgment, effective 90 days from the date hereof, for the use and benefit of [Priscilla] in the principal sum of $3,340,818, together with interest on the unpaid balance thereof computed at the rate of 9% per annum from the date of entry of this judgment until paid.

In paragraph (4) of its decree of divorce and final judgment, the District Court made the following award to Cullen:

(4) [Cullen] is awarded as his sole and exclusive property the following items:

All property; real, personal or mixed; separate or community, standing in his name or in the name of [Priscilla] save and except the items described in Paragraph numbered (2) above. Such award includes but is not limited to the home located at 4200 Mockingbird Lane and [Cullen's] undivided interest in the real estate on which it was constructed, capital stock in any corporation and all retirement benefits, bonus and pension benefits, if any, accruing to [Cullen] by reason of past or present employment or from his ownership of capital stock in any corporation.

In summary, the District Court awarded Priscilla certain personal items and a personal money judgment against Cullen in the amount of $3,475,000, representing one-half the net value of the community estate, less amounts previously advanced to her.[4] Pursuant to other terms of the divorce decree, Priscilla also was awarded a money judgment, not at issue herein, representing payment to her of a portion of the legal fees she incurred in obtaining the divorce.

During the divorce proceedings, Cullen was required to deposit certain funds with the clerk of the Tarrant County District Court for the benefit of Priscilla. At the time the divorce decree was entered on April 23, 1979, a total of $1,402,598 had been deposited with the District Court, of which $1,224,881 was obtained by Cullen from his separate property and $177,717 was obtained by him from the liquidation of community assets. The clerk of the District Court invested those funds in an interest-bearing certificate of deposit which reached maturity on June 12, 1979, and

---

[4]The personal money judgment was reduced by $134,182 to $3,340,818, reflecting funds advanced to Priscilla during the divorce proceedings.

which could not be redeemed prior to that date without forfeiture of interest accrued thereon.

The divorce decree provided that if Cullen wanted to make a disbursement` of the funds deposited with the District Court prior to June 12, 1979, he could provide the District Court with cash in the face amount of the certificate of deposit, to be disbursed to Priscilla in lieu of the funds invested in the certificate of deposit. To that end, on May 23, 1979, Cullen obtained a $1,402,598 loan, the proceeds of which he deposited with the District Court for the benefit of Priscilla. Shortly thereafter, the District Court disbursed $1,402,598 to Priscilla in partial satisfaction of the personal money judgment awarded against Cullen in her favor.[5]

On or about June 28, 1979, the Tarrant County District Court modified the divorce decree by decreasing the amount of the personal money judgment awarded to Priscilla by $29,500 to $3,311,318.[6] That reduction was ordered by the District Court to reflect the value of certain art objects awarded to Cullen in the divorce proceedings that were later given to Priscilla, and to award Cullen a payment from Priscilla of $12,500 with respect to some of the attorney's fees he incurred in the divorce proceedings.

On or about July 20, 1979, Cullen obtained a loan in the principal amount of $3,563,220. From the proceeds of that loan Cullen paid $1,908,720 to Priscilla as the final payment due by him under the divorce decree (the $1,908,720 payment plus the $1,402,598 forwarded to Priscilla by the District Court equals $3,311,318, the total amount due under the modified divorce decree). On July 23, 1979, Cullen paid Priscilla's attorneys $625,000 plus interest as ordered by the District Court. Thereafter, Priscilla executed a document entitled "Release of Judgment" in which she acknowledged that Cullen had fully paid the money judg-

---

[5]Although the divorce decree directs that amounts Cullen deposited with the District Court were first to be disbursed to Priscilla's attorneys for payment of $625,000 in legal fees, apparently the entire $1,402,598 was disbursed directly to Priscilla. Cullen later satisfied payment of the attorneys' fees by means of a cashier's check made payable directly to the attorneys.

[6]The amount of the money judgment was calculated as follows: $3,340,818 minus $29,500 equals $3,311,318.

ment awarded to her by the District Court pursuant to the divorce decree.[7]

On her 1979 Federal income tax return, Priscilla did not report gain on the disposition of her interest in the community property. In his notice of deficiency to Priscilla, respondent determined that Priscilla sold her interest in the community property and therefore realized a long-term capital gain of $1,191,243.

On his and his new wife's joint Federal income tax return for 1979, Cullen reported that on December 14, 1979, one of the major assets of the community estate (namely, the Wilcoxson lease) was sold for $5,727,705. In determining his taxable gain on that transaction, Cullen treated his receipt of Priscilla's one-half community interest in the Wilcoxson lease as a purchase thereof, and he adjusted his tax basis in the lease upward to include the fair market value (i.e., the deemed selling price) of Priscilla's one-half interest in the lease at the time the divorce decree was entered.

In his notice of deficiency to Cullen and Karen J. Davis, respondent took a protective position that was inconsistent with the notice of deficiency issued to Priscilla. Respondent determined that the adjustment to Cullen's basis in the Wilcoxson lease was improper because Cullen had not purchased Priscilla's one-half interest in the lease, but had received the lease as part of a nontaxable division of community property. Respondent, therefore, determined that Cullen's tax basis in the Wilcoxson lease was its original basis to the community and that Cullen realized $1,183,580 additional gain on the sale of the lease.

## OPINION

Generally, and with respect to the year in dispute,[8] where community property is divided in a divorce proceeding so that each spouse takes as his or her separate property certain assets of the community equal in value to community assets set aside for the other spouse, so that each

---

[7]Apparently, Cullen did not pay Priscilla interest on the money judgment from the date the divorce decree was entered until the judgment was fully paid.

[8]Sec. 421 of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 793, added new Internal Revenue Code sec. 1041. That section provides that no gain or loss shall be recognized on a transfer of property from an individual to a former spouse incident to a divorce. New sec. 1041 applies to transfers made after July 18, 1984, and thus is not applicable herein.

spouse takes approximately one-half of all of the community property, the division of community property is regarded as a nontaxable event, and the basis of the property received by each spouse is its basis to the community prior to the division. *Siewert v. Commissioner,* 72 T.C. 326, 332-333 (1979); *Harrah v. Commissioner,* 70 T.C. 735, 748 (1978); *Carrieres v. Commissioner,* 64 T.C. 959, 964 (1975), affd. per curiam 552 F.2d 1350 (9th Cir. 1977).

Where, however, there is an unequal division of community property, such as where one spouse receives property having an aggregate value equal to substantially more than half the value of all of the community property, or where there is an equal division of the value of all of the community property but one spouse gives separate property in return for all or a substantial portion of the other spouse's share of the community property, the transaction is treated for Federal income tax purposes as a taxable sale of assets. *Siewert v. Commissioner, supra* at 333; *Carrieres v. Commissioner, supra* at 964-965.[9]

Priscilla argues that the community property was equally divided and that she was awarded a number of community assets having a relatively small value (namely, the bank accounts, the automobile, the pets, the horse, and certain other items of personal property), plus one community asset having a large value (namely, the community's right of reimbursement from Cullen). Priscilla emphasizes that the divorce decree states that Cullen is to receive only those community assets that were not "otherwise disposed of in the judgment." Priscilla contends that the right of reimbursement was not awarded to Cullen because it was otherwise disposed of in the form of the personal money judgment awarded to her by the District Court.

Cullen argues that the divorce decree specifically awarded to him all of the community assets and liabilities, including the right of reimbursement, and required him to make an equalizing payment to Priscilla out of his separate property, reflected by the money judgment. Cullen argues that the

---

[9] We note that in the last situation, as in the first two, the only property subject to division under Texas law is that property comprising the total "community estate," and the award of separate property to one spouse in exchange for his or her interest in the community property is simply a means of equalizing the division of the total community estate. See *Cameron v. Cameron,* 641 S.W.2d 210 (Tex. 1982).

transaction was a taxable sale that requires recognition of gain by Priscilla and adjustments to the basis of the property he acquired from her.[10]

As mentioned, respondent has taken inconsistent positions to protect the revenue. Respondent's primary position, however, is that due to the manner in which the community property was divided, the division resulted in a taxable sale by Priscilla of her share of the community property.

After careful review and consideration of the documents and testimony in evidence in this case, of Texas law with respect to rights of reimbursement and money judgments awarded to divorcing spouses, and of Federal court decisions regarding the taxability of divisions of community property upon divorce, we conclude that the transfer by Priscilla to Cullen of a portion of her interest in the community property in exchange for the money judgment and other items of community property constituted a nontaxable division of community property.

Under Texas law, an equitable right of reimbursement in favor of the community arises when funds or assets of the community are used to benefit or enhance the separate property of one spouse without some corresponding benefit to the community. *Vallone v. Vallone*, 644 S.W.2d 455, 458-459 (Tex. 1982); *Dakan v. Dakan*, 125 Tex. 305, 83 S.W.2d 620, 627 (1935). A right of reimbursement typically is recognized where community property has become so much a part of the separate property of one spouse so as to be no longer separable therefrom. As stated in L. Simpkins, Texas Family Law, sec. 22:38, at 498 (5th ed. 1975)—

separate property is not entitled to absorb the community, nor any part of it, by way of expenditures for improvements. To permit this would be to permit the conversion of the community into the separate property of either spouse * * *

Where a right of reimbursement is recognized in favor of the community in a divorce proceeding, the right of reimbursement can be reflected in the division of community property simply as a charge against the spouse who

---

[10]Cullen, alternatively, contends that the Wilcoxson lease was not sold during 1979 and that he erroneously reported gain from the sale of the lease on his 1979 Federal income tax return. This alternative issue has been severed from trial of the instant issue and will be addressed in a separate opinion, if necessary.

utilized the community funds to his own benefit. See, e.g., *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982); *Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328, 334 (1943); *Cook v. Cook*, 665 S.W.2d 161, 165-166 (Tex. Ct. App. 1983); *Snider v. Snider*, 613 S.W.2d 8, 10 (Tex. Ct. App. 1981); *Hawkins v. Hawkins*, 612 S.W.2d 683, 684-685 (Tex. Ct. App. 1981); *Williams v. Williams*, 171 S.W.2d 530, 531 (Tex. Ct. App. 1943).

Texas courts recognize, however, that the award of a right of reimbursement merely by way of a charge against one spouse often is inadequate, and that the only practical and effective way to award a right of reimbursement of the community to the spouse whose use of community property did not give rise to the right of reimbursement is to impose a money judgment against the other spouse or an equitable lien against his property in favor of the first spouse. As stated in *Belz v. Belz*, 667 S.W.2d 240, 245 (Tex. Ct. App. 1984), "A money judgment may * *.* be awarded * * * *to effectuate* a right of reimbursement." (Emphasis added.) See also *In re Marriage of Jackson*, 506 S.W.2d 261, 267 (Tex. Ct. App. 1974).

Many Texas cases illustrate the award of money judgments to effectively transfer the community's right of reimbursement to a spouse. See *Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex. 1984); *Jones v. Jones*, 699 S.W.2d 583, 586 (Tex. Ct. App. 1985); *Pride v. Pride*, 318 S.W.2d 715, 722 (Tex. Ct. App. 1958); see also *Allen v. Allen*, 284 S.W.2d 774, 775-776 (Tex. Ct. App. 1955); *Milligan v. Milligan*, 282 S.W.2d 127, 128 (Tex. Ct. App. 1955); *Swisher v. Swisher*, 190 S.W.2d 382, 384 (Tex. Ct. App. 1945); *Davis v. Davis*, 108 S.W.2d 681, 687-688 (Tex. Ct. App. 1937); see generally L. Simpkins, Texas Family Law, sec. 5:62 at 341 (5th ed. 1975); 40 Texas Jur. 3d sec. 551, at 68-72.

Other Texas cases illustrate the award of money judgments combined with equitable liens against the separate property of one spouse as a means of effectively transferring the community's right of reimbursement to the other spouse. See *Eggemeyer v. Eggemeyer*, 623 S.W.2d 462, 466 (Tex. Ct. App. 1981); *Poulter v. Poulter*, 565 S.W.2d 107, 110-111 (Tex. Ct. App. 1978); *Duncan v. Duncan*, 374 S.W.2d 800, 801-802 (Tex. Ct. App. 1964); *Smith v. Smith*, 187 S.W.2d 116, 121 (Tex. Ct. App. 1945).

In this case, a right of reimbursement was found to exist in favor of the community against Cullen in the amount of $3,929,273, and such right was recognized in the divorce decree to be an asset of the community. The right of reimbursement represented approximately one-half of the net community estate of $6,949,999, and it reflected the fact that Cullen had converted $3,929,273 of the community's cash to his separate property. The District Court determined that he had an obligation to return that amount to the community.

The introductory sentence to paragraphs (a) through (e) of Finding of Fact No. 13 of the divorce decree specifically states that Priscilla's and Cullen's *"community estate* is as follows" (emphasis added), and then it lists in paragraph (e) thereof the $3,475,000 money judgment that was awarded to Priscilla. In light of that language, and in light of the fact that rights of reimbursement owed to a community by one spouse typically are awarded to the other spouse by Texas State courts in the form of money judgments, in substance and fact Priscilla was awarded the community's right of reimbursement due from Cullen to the extent of the amount of the money judgment (namely, $3,475,000). Before the divorce, the community owned a receivable due from Cullen in the amount $3,929,273. After the divorce, Priscilla owned a receivable due from Cullen in the amount of $3,475,000.

As stated, the recognition of the right of reimbursement as a community asset, the specific inclusion of the money judgment in the divorce decree as part of the community estate, combined with the practice of Texas State courts to award rights of reimbursement to the "other" spouse, adequately link the money judgment awarded to Priscilla to the community's right of reimbursement due from Cullen. Accordingly, Priscilla is to be regarded as having received in the divorce proceeding certain community property (namely, the listed items of personal property *and* the money judgment) in exchange for her interest in the community property awarded to Cullen. Such an equal exchange of community property constitutes a nontaxable exchange. *Siewert v. Commissioner, supra; Carrieres v. Commissioner, supra.*

Cullen argues that the right of reimbursement (representing his personal obligation to reimburse the community estate) was awarded to himself. Cullen, however, has not referred us to a single Texas State court decision where a community's right of reimbursement was awarded to the spouse whose actions gave rise to the right of reimbursement. Furthermore, there is no suggestion in the divorce decree that the right of reimbursement was awarded to Cullen. Cullen relies on the general statement in the divorce decree (Finding of Fact No. 13) that all community property not otherwise awarded to Priscilla is awarded to him. That argument, however, is rebutted by our conclusion that the award of the money judgment effectuated the right of reimbursement (to the extent of $3,475,000), and constituted a de facto award of the right of reimbursement to Priscilla. Since the right of reimbursement was awarded to Priscilla in the form of the money judgment, the general "catch-all" language of Finding of Fact No. 13 on which Cullen relies is not applicable.

Cullen also emphasizes language in paragraph (6) of the decree of divorce and final judgment, previously quoted herein, to the effect that Priscilla was awarded the money judgment "in lieu of any and all interest in the community estate of the parties." Cullen argues strenuously that this language unambiguously establishes that Priscilla did not receive *any* community property and that the money judgment therefore cannot be regarded as an award to her of the right of reimbursement. The short answer to this argument is that the language suggesting that Priscilla did not receive any community property, and that the money judgment was awarded in lieu thereof, simply and obviously constitutes an error in drafting. It is indisputable that Priscilla was awarded in the divorce decree some community property (e.g., bank accounts, an automobile, jewelry, and various household belongings). Thus, the "in lieu of" language in paragraph (6) of the decree of divorce and final judgment on which Cullen relies obviously is inaccurate.

Clearly, in addition to, not in lieu of, certain items of community property awarded to Priscilla, she was awarded a money judgment. The pivotal question herein is whether the money judgment was awarded to Priscilla as part of the

community assets (or in order to effectuate an award to her of the right of reimbursement). Once the language on which Cullen relies from paragraph (6) of the decree of divorce and final judgment is recognized as being inaccurate, that language no longer supports his argument.

Cullen argues further that paragraph (4) of the decree of divorce and final judgment provides that all community property was awarded to Cullen except the community property specifically enumerated in paragraph (2) of the decree of divorce and final judgment. We believe Cullen misreads the scope of paragraph (4). By its own terms, paragraph (4) pertains only to property "standing in [Cullen's] name or in the name of [Priscilla]." The right of reimbursement owed by Cullen to the community did not stand in anyone's name. Rather, as explained, it was an asset of the community that arose in equity. Thus, the right of reimbursement simply is not addressed or reached by the language of paragraph (4). The right of reimbursement was a community asset, but one that existed outside the scope of paragraph (4).

Cullen also relies on the testimony in this Court of the judge of the Tarrant County District Court who presided over the divorce proceedings and who authored the findings of fact, conclusions of law, final divorce decree, and judgment. His testimony was offered to explain the terms of that document and his theory for dividing the community property. Priscilla objected to this testimony, although Priscilla submitted, prior to the trial, an affidavit of the same District Court judge in support of a motion for summary judgment filed herein. In light of that affidavit, we believe Priscilla waived any right to object to the testimony of the District Court judge, and we overrule Priscilla's objection thereto.[11]

The District Court judge stated in the affidavit submitted by Priscilla that the award of the money judgment to Priscilla represented the right of reimbursement. In an amended affidavit submitted by Cullen, the District Court judge stated only that the right of reimbursement was a

---

[11]See also *Cook v. Commissioner*, 80 T.C. 512, 526 (1983), affd. without published opinion 742 F.2d 1431 (2d Cir. 1984), allowing testimony of a State court judge to explain his division of community property as set forth in a divorce decree.

community asset, but did not state that it was awarded either to Priscilla or Cullen.

At trial herein, the District Court judge testified that he did not intend to award the right of reimbursement, per se, to Priscilla. He testified, however, that he intended to award one-half of the community property (*not just the value thereof*) to Priscilla and that he intended the division of community property to be nontaxable to Priscilla.

Particularly pertinent is the following testimony by the District Court judge:

Answer: * * * My basic premise was that she was entitled to half of the community estate.

I tried to figure out what that community estate consisted of. One of the items was the right of reimbursement which just added into the total. * * *

I wanted Ms. Davis to have half of the community estate. I thought that was what she was entitled to. I tried to figure out what the community estate consisted of, gave her half of it.

Also pertinent is the judge's explanation of how rights of reimbursement are awarded under Texas law—

THE COURT: What if, in a Texas divorce proceeding, one of the assets of the community was a right to reimbursement from one of the spouses, as was the case in the Priscilla-Cullen Davis divorce proceeding?

And what if the judge decided affirmatively that he did want to pass on specifically that right of reimbursement to the other spouse, the spouse who did not owe it to the community? How would he do that? What are the alternatives for the judge to convey that to the second spouse?

THE WITNESS: Well, of course, a money judgment is the first thing that occurs to you.

THE COURT: So one way to convey that would be a money judgment in favor of the second spouse.

THE WITNESS: True.

THE COURT: What other ways are there to do it?

THE WITNESS: You could award it out of his separate estate. You could—

THE COURT: I don't quite understand that. Exactly what form would that award take? What would be said on the divorce decree to effect that award?

THE WITNESS: (No response.)

THE COURT: Is one option just simply stating in the divorce decree that the second spouse is awarded a right of reimbursement from the first spouse? That is a pretty—

THE WITNESS: That is not—

THE COURT: Is that—

THE WITNESS: —carrying it far enough. You have got to give her some way to enforce that right of reimbursement.

Cullen notes that the money judgment awarded to Priscilla was paid by him from his property that never had been part of the community estate. The critical point in our analysis, however, is not the source of funds for payment of the money judgment, but whether the money judgment itself effectively represented an award to Priscilla of the right of reimbursement, which right was a community asset.

A number of opinions of this Court have involved an award to one spouse in a divorce proceeding of a personal note of the other spouse or a money judgment against the other spouse. We have held in those cases that the underlying division of the community property resulted in a taxable sale. See, e.g., *Siewert v. Commissioner*, 72 T.C. 326 (1979); *Edwards v. Commissioner*, 22 T.C. 65 (1954). Those cases are distinguishable from the instant case because the personal notes or money judgments awarded therein did not represent or effectuate an award of a community asset.

Based upon the analysis and authorities set forth above, we conclude that the division of community property between Priscilla and Cullen was nontaxable. Accordingly,

*Decision will be entered for the petitioner in docket No. 31386-84.*

*An appropriate order will be entered in docket No. 36032-85.*