Gary Warren COOK, Appellant,

v.

Janet Lynn COOK, Appellee.

No. 2–83–071–CV.

Court of Appeals of Texas,
Fort Worth.

Dec. 29, 1983.

Rehearing Denied Jan. 26, 1983.

Burleson, Pate & Gibson and Jack C. Pate and Curtis R. Harden, Jr., Dallas, for appellant.

Philips, White, Davidge, Griffin, Shelton, Eames, Wood & Duncan, and Robert M. Eames, Denton, for appellee.

Before JORDAN, BURDOCK and HILL, JJ.

## OPINION

JORDAN, Justice.

This is an appeal from a decree of divorce. In ten points of error, appellant, Gary Cook, complains of the measure of reimbursement to the community estate for funds advanced to his separate estate to reduce purchase money indebtedness on realty and for funds advanced for improvements to his separate realty. He also complains of the division of the community estate and of the amount of child support ordered.

We reverse and remand.

The parties were married in 1973 and ceased to live together in 1981. The corrected decree of divorce in this case was entered on March 11, 1983. Two children were born of the marriage, ages seven and five as of the time the decree was entered. The parties entered into an agreement for the joint managing conservatorship of the two children.

It was stipulated that prior to the marriage, Gary Cook purchased three pieces of property, two rental properties referred to as The Oxford House and The Cambridge House, and an unimproved lot on Montecito Road in Denton, Texas. All three of these properties were awarded to Gary Cook as his separate property subject to Janet Cook's right of possession of the Montecito property until the youngest of the children reaches eighteen or until she abandons the property. It was also stipulated that the community paid $10,000.00 in principal, interest, and taxes to reduce Gary Cook's separate purchase money indebtedness on the Montecito property, reducing the principal amount of the debt by $1,000.00. The trial court ordered reimbursement to the community for the full $10,000.00 applied to the purchase money debt.

The parties stipulated that after the marriage, community funds were used to construct the parties' residence on the Montecito property and to pay for improvements to The Cambridge House. The trial court calculated the enhancement in property value attributable to these improvements and awarded the resulting amount to the community as reimbursement.

In his first two points of error, Gary Cook complains that the trial court erred in ordering reimbursement to the community estate for the full amount of the community's $10,000.00 expenditure to reduce the purchase money indebtedness on the Montecito property. He asserts that reimbursement should have been limited to the amount of principal reduction since there was no evidence and no finding that the amounts applied to interest and taxes exceeded the benefit to the community from the use and occupancy of the Montecito property. Janet Cook contends that such evidence and finding were unnecessary.

In support of her contention, Janet Cook cites the cases of *Brooks v. Brooks*, 612 S.W.2d 233 (Tex.Civ.App.—Waco 1981, no writ) and *Pruske v. Pruske*, 601 S.W.2d 746 (Tex.Civ.App.—Austin 1980, writ dism'd). In *Pruske*, community funds had been expended to reduce the indebtedness on the husband's separate property, a business complex. The court, after acknowledging the existence of contrary authority in *Klein v. Klein*, 370 S.W.2d 769 (Tex.Civ. App.—Eastland 1963, no writ), held that the better rule was to allow reimbursement for the full amount of community funds expended in debt reduction on the property without requiring proof that the expenditures exceeded the benefits received by the community from the property. *Pruske, su-*

*pra* at 748. In so holding, the court cited recent authority for the proposition that the community is entitled to reimbursement regardless of enhancement in value or benefits received.

We note initially that the court in *Pruske* made no distinction regarding reimbursement for principal reduction on separate purchase money indebtedness and reimbursement for expenditures applied to interest and taxes on such indebtedness. We believe such a distinction should be made for the reasons set out below. Secondly, we have read carefully the cases cited by the court as supportive of its holding and find that they, generally, point out only that proof of *enhancement in value* is unnecessary where the reimbursement sought is for community funds expended to reduce or extinguish separate purchase money debt. With this proposition we are in agreement. The cited cases do not, however, address the issue of the necessity of proof that expenditures for interest and taxes on separate purchase money debt exceed the benefit to the community from the property, and for this reason, we do not regard them as persuasive authority for the holding in *Pruske* on this specific issue.

In the *Brooks* case, the trial court specifically found that community funds had been expended for "house payments, taxes and insurance payments" on the separate property of the wife. *Brooks, supra* at 235. The court ordered that the community be reimbursed for the *total* amount expended, thus ordering reimbursement for funds expended on taxes and the interest portion of the house payment. In upholding this reimbursement, the court of civil appeals relied in part on the *Pruske* case and the rule announced therein, making no distinction between reimbursement for reduction of principal and reimbursement for payment of taxes and interest; the court simply referred to reimbursement for funds expended to reduce "indebtedness".

■ For the reasons above stated, we respectfully decline to follow the rule announced in the *Pruske* and *Brooks* cases for we believe the proper rule to be as stated in *Colden v. Alexander,* 171 S.W.2d 328, 334 (Tex.1943):

> [W]here the husband purchases land on credit before marriage, and pays the purchase-money debt after marriage out of community funds, equity requires that the community estate be reimbursed.... The rule of reimbursement, as above announced, is purely an equitable one (citation omitted). Such being the case, we think it would follow that *interest paid during coverture out of community funds on the prenuptial debts of either the husband or the wife on land, and taxes, would not even create an equitable claim for reimbursement, unless it is shown that the expenditures by the community are greater than the benefits received.* (Emphasis added.)

■ Janet Cook contends that application of the rule of *Colden v. Alexander, supra,* is inequitable where the property in question is non-income producing property such as the Montecito property. The fact that the benefit to the community is the use and occupancy of the property, rather than income from the property, does not negative the requirement of a balancing of equities in reimbursing the community estate. The rule of *Colden v. Alexander, supra,* contemplates a *benefit* to the community without specification of the form of the benefit. The community is entitled to reimbursement for funds expended to reduce the principal amount of the debt, but in the absence of proof that the amount expended for interest and taxes was greater than the benefit received by the community from its use and occupancy of the Montecito property, and proof of the amount of such excess, the community is not entitled to reimbursement therefor. *See Hawkins v. Hawkins,* 612 S.W.2d 683, 685 (Tex.Civ.App.—El Paso 1981, no writ).

The first two points of error are sustained.

In his third point of error, Gary Cook contends that the trial court erred in utilizing enhancement in value as the measure of reimbursement due the community for

funds expended to improve the Montecito property and The Cambridge House.

The trial court concluded that the community was entitled to be reimbursed in the following amounts: 1) $255,000.00 for the enhancement in value of the Montecito property; 2) $99,500.00 for the enhancement in value of The Cambridge House. Payment of Janet Cook's share of the community's reimbursement (on these properties and other properties not in dispute) was secured by a lien on the Montecito property.

Gary Cook contends that the proper measure of reimbursement for expenditures for improvements is the lesser of cost of the improvements and the amount of enhancement in value, and that since the cost of the improvements to the Montecito property and The Cambridge House was less than the resulting enhancement in values, the community should have been reimbursed only for the cost of the improvements. Incorporated in his argument under this point of error is the contention that an award of reimbursement to the community for enhancement in value, secured by a lien on the realty, operates as an impermissible divestiture of his separate property.

■ At the outset, we address the contention that the award of enhancement in value secured by a lien on the property constitutes an impermissible divestiture of separate property. Reimbursement to a marital estate for funds advanced to improve another marital estate is not based upon the acquisition of a title interest in either the underlying realty or the improvements, *Burton v. Bell,* 380 S.W.2d 561, 564 (Tex.1964), but rather is based upon equitable principles. *Ogle v. Jones,* 143 S.W.2d 644, 645 (Tex.Civ.App.—Waco 1940, writ ref'd). An award of reimbursement simply creates an obligation to pay for the enhancement in value attributable to the improvements; such an obligation in no way deprives the estate of its title interest in either the underlying realty or the improvements thereon. Thus, we perceive no divestiture of title by virtue of the creation of an obligation in the estate benefited by the improvements to pay for the enhancement in value resulting from such improvements.

■ The trial court is also vested with authority to fix a lien on the separate property of one spouse to secure the discharge of payments by the owner of the property to the other spouse. *Buchan v. Buchan,* 592 S.W.2d 367, 371 (Tex.Civ.App.—Tyler 1979, writ dism'd). In *Buchan,* a spouse's separate property was subjected to an equitable lien to secure a payment owed to the other spouse and the argument was made that the creation of the debt and the imposition of the lien operated as a divestiture of the property. The court rejected this argument holding that the imposition of such a lien was not a divestiture of *title* to the property. *Buchan, supra.* The court stated: "True, it may finally result in the loss of title if sold under execution, but the ultimate divestiture by foreclosure is essentially voluntary, since the owner has the option to prevent this by complying with the court's order to pay." *Buchan, supra.* While we recognize that the lien in the *Buchan* case was imposed to secure the payment of a spouse's interest in a leasehold on the other spouse's separate property, we believe the principles stated therein to be applicable to the case before us. Neither the award of the enhancement in value attributable to the improvements nor the securing of the award by the imposition of an equitable lien constituted a divestiture of Gary Cook's separate property.

■ After a careful review of the parties' arguments and the controlling case law, we have concluded that enhancement in value is the proper measure of reimbursement to the community for funds expended to improve the separate property of a spouse. The Supreme Court of Texas has consistently held that where a marital estate seeks reimbursement for improvements to another marital estate, the amount of reimbursement is *not* determined by the cost of the improvements, but by the enhancement in value of the estate improved. *See Burton v. Bell, supra* at 567; *Lindsay v. Clayman,* 254 S.W.2d 777,

781 (Tex.1952); *Dakan v. Dakan,* 83 S.W.2d 620, 628 (Tex.1935). Gary Cook argues that in each of these cases, the court contemplated cost of improvements as the true measure of reimbursement and enhancement in value as a *limitation* upon the recovery of costs. We find this argument to be without merit.

The right of reimbursement between marital estates is based upon equitable principles. *See Ogle, supra.* The estate benefited must account for such benefit to the estate which funded the improvements. *Lindsay, supra.* Conversely, if there has been no benefit by virtue of the improvements, then nothing is due the estate which advanced the funds. It is in accord with these principles that the Supreme Court in *Dakan, supra,* held that "the community estate must be reimbursed for the cost of the buildings" but that "the amount of recovery is limited to the amount of enhancement of the property at the time of partition by virtue of the improvements placed thereon." Neither *Dakan* nor the subsequent cases are authority for the proposition that cost of improvements is the measure of reimbursement. Rather, *Dakan* and the above-cited cases stand for the proposition that the recovery to the estate advancing funds for improvements to another marital estate is measured by enhancement in value. Where enhancement in value is *less* than the cost of the improvements, the amount of enhancement does operate as a limitation upon the recovery; however, where enhancement in value *exceeds* the cost of the improvements, equity requires that the estate advancing the funds recover the amount of the enhancement in value. Given the fact that enhancement in value is the measure of recovery to the marital estate advancing funds for the improvements, use of the term "reimbursement" *may* be a misnomer for the recovery since that term implies only a repayment of the funds expended. However, we believe that in determining the measure of the recovery to the estate advancing the funds, the underlying purpose for the recovery, and not its appellation, should control.

To adopt the measure urged by Gary Cook in the instant case would be, in all practicality, to limit recovery strictly to the cost of the improvements, an inequitable result both where the improvement greatly enhances the value of the property and where it results in little or no enhancement in value. In light of the nature of reimbursement as an *equitable* remedy between marital estates, we believe the amount of enhancement in value is the proper measure of reimbursement.

The third point of error is overruled.

In his fourth and fifth points of error, Gary Cook asserts that the trial court abused its discretion in the division of the community estate of the parties. In light of our disposition of the first two points of error and the fact that upon remand, the calculation of the community estate will be altered, necessitating a new division of the estate, we pretermit discussion of these points.

In points of error six through ten, Gary Cook challenges the trial court's order that he contribute the sum of $1000.00 per month toward the support of his minor children by "no evidence," "insufficient evidence," and "against the weight and preponderance of the evidence" points. He also contends that the order constitutes an abuse of the trial court's discretion.

The "no evidence" point requires us to consider only the evidence supporting the trial court's finding and to disregard all contrary evidence. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Smallwood v. Smallwood,* 625 S.W.2d 75, 77 (Tex.App.—Fort Worth 1981, no writ). The record contains the income tax returns of the Cooks for the years 1979, 1980, and 1981. These returns reflect, over the three-year period, an increase in Gary Cook's *net* profits from his business from $66,582.00 to $70,116.00. The increase in *gross* profits from the business, prior to deductions for such items as depreciation and entertainment, was substantially greater. We believe the above constitutes evidence to support the trial

court's finding of Gary Cook's ability to contribute support and its order.

The point of error asserting that the evidence was insufficient to support the order requires that we consider all the evidence adduced at the hearing. *Smallwood, supra.* In addition to the evidence showing the increase in Mr. Cook's gross and net earnings, the record reflects that Mr. Cook was awarded as his separate property, certain income-producing properties. The record indicates that during the pendency of the divorce proceedings, Mr. Cook borrowed approximately $40,000.00, a portion of which was applied toward temporary alimony and child support and another portion of which went to "support" a rental property which was losing money during that period. Mr. Cook estimated his monthly expenses to be approximately $3100.00, including a $750.00 monthly rent payment on an apartment. There was testimony by Mr. Cook that, according to his projections, his income from his business would decrease by thirty-five to forty percent in the upcoming year.

With respect to Janet Cook, the record reveals total annual salaries of $24,322.00 in 1979; $27,494.00 in 1980; and $32,639.00 in 1981. Mrs. Cook estimated the monthly living expenses for herself and the two children at $3466.00, including the $711.00 monthly mortgage payment on the Montecito property which she is required to pay for the duration of her residence in the property. The monthly expense figure also included $400.00 per month for a live-in housekeeper who assisted with the care of the children.

After a thorough review of the evidence, we hold the evidence to have been sufficient to support the trial court's order. The evidence showed a trend of increase in the earnings of Gary Cook. His testimony in regard to the projected decrease in his profits in the coming year, although uncontradicted, was the testimony of an interested witness and, therefore, raised only a fact question which the trial court could find adversely to him. *Reynolds v. Reynolds,* 452 S.W.2d 950, 952 (Tex.Civ.App.—Dallas 1970, no writ). Additionally, the trial court was entitled to consider the earning potential of the parties in determining the amount of child support to be paid, *Wetzel v. Wetzel,* 514 S.W.2d 283, 284–85 (Tex.Civ.App.—San Antonio 1974, no writ), as well as the income-producing nature of the property set aside to Gary Cook as his separate property.

Under this record, the trial court's order was not against the weight and preponderance of the evidence nor did the order constitute an abuse of the trial court's discretion. We are *not* presented with a situation in which the amount of child support ordered exceeds the father's *ability* to pay, despite Mr. Cook's assertions to the contrary, and we will not disturb the trial court's ruling merely because we might have set a different amount of child support. *Smallwood, supra.*

Points of error six through ten are overruled.

The judgment of the trial court is reversed and remanded for a proper calculation of the reimbursement due the community and for a division of the estate of the parties after such recalculation.