Byron Walter RUSK, Appellant,

v.

Sheila Anne Spencer RUSK, Appellee.

No. 14–97–00983–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 30, 1999.

Rehearing Overruled Oct. 21, 1999.

**302**

Shawn Casey, Houston, for appellant.

John F. Nichols, Houston, for appellee.

Panel consists of Justices MAURICE E. AMIDEI, FOWLER, and WITTIG.

## MAJORITY OPINION

DON WITTIG, Justice.

This is an appeal from a final decree of divorce and judgment. Byron Walter Rusk contends that the trial court erred in: (1) finding that stock held in a corporation was community property; (2) appointing a receiver over property because there was no showing that any property was in jeopardy of being lost, removed, or materially injured, and without proper notice or pleadings; (3) divesting him of his separate property by placing it in receivership; (4) placing certain exempt properties in receivership for the purpose of satisfying the judgment; (5) finding sufficient evidence to support a community reimbursement claim; and (6) disproportionately dividing the marital estate. We reverse, remand and vacate.

### I. BACKGROUND

In 1989, Byron Walter Rusk and Sheila Anne Spencer Rusk married.[1] Their union produced one child. In August 1997, following a non-jury trial, the trial court dissolved the parties' marriage. Pursuant to the agreement of the parties, the trial court placed their minor child in a joint managing conservatorship, with each respective party having equal periods of possession. While the parties agreed to the matters affecting the custody, support and welfare of the child, aspects of the property issues were hotly contested. The trial court divided the parties' marital estate, confirmed certain separate property status, and awarded a disproportionate community share to Sheila. The trial court appointed a receiver to take charge of certain real and personal, separate and community property awarded to Byron until the trial court's equitable owelty, recoupment, and reimbursement award of $150,000 to Sheila was satisfied.

### II. DISCUSSION

*Corporate Stock*

■ In his first issue, Byron contends that the trial court erred in finding that 1,000 shares of corporate stock were community property. Byron claims that the stock was his separate property.

Byron owned and operated "RMS," an automotive sales and service business, incorporated in 1984.[2] The corporation was formed by Byron's father, Giles Rusk ("Mr. Rusk"), a licensed attorney. When the closely-held corporation was formed, the entire 1,000 shares of its stock were issued in the name of Byron's father, Mr. Rusk. Byron operated the business from its inception, repairing, buying, and selling cars. Mr. Rusk not only did not participate or have anything to do with the business but, in fact, moved from Houston to

---

1. For the sake of clarity, we will identify the parties as Byron and Sheila.

2. RMS is an assumed name; the corporate name of the business is Westheimer–Lanier Service, Inc., and is the company whose stock's characterization is in question.

Nacodoches during the relevant time. The widower Mr. Rusk, to his regret, did not actually deliver the stock certificate to Byron until 39 days after the marriage. Mr. Rusk indicated he did not issue or deliver the stock to his son sooner, because of credit concerns for Byron. Byron asserts that the evidence was insufficient to support the trial court's finding of fact, characterizing the stock as community property. We agree.

In reviewing a "no evidence" point, the court of appeals must reject all evidence contrary to the fact-finder's findings and consider only the facts and circumstances which tend to support those findings. *Ellebracht v. Ellebracht*, 735 S.W.2d 658, 662 (Tex.App.-Austin 1987, no writ). In reviewing factual sufficiency issues, the reviewing court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.; see also In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

 Separate property commands constitutional stature. "All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse...." TEX. CONST. art. XVI, § 15 (amended 1987). The Texas Family Code defines separate property as that property owned by a spouse before marriage, acquired during the marriage by gift, devise, or descent, or as a recovery for personal injuries sustained during the marriage. TEX. FAM.CODE ANN. § 3.001 (Vernon 1998). Community property consists of the property, other than separate property, acquired by either spouse during marriage. TEX. FAM.CODE ANN. § 3.002 (Vernon 1998). In Texas, property possessed by either spouse during the marriage is presumed to be community property absent clear and convincing evidence to the contrary. *Scott*

*v. Estate of Scott*, 973 S.W.2d 694, 695 (Tex.App.-El Paso 1998, no pet.); *Robles v. Robles*, 965 S.W.2d 605, 614 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *see also* TEX. FAM.CODE ANN. § 3.003 (Vernon 1998). The characterization of property as either "community" or "separate" is determined by the inception of title to the property. *Id.; see also Jensen v. Jensen*, 665 S.W.2d 107, 109 (Tex.1984). The major consideration in determining the characterization of property as community or separate is the intention of spouses shown by the circumstances surrounding the inception of title. *Scott*, 973 S.W.2d at 695; *see also Bahr v. Kohr*, 980 S.W.2d 723, 728 (Tex.App.-San Antonio 1998, no pet.). Inception of title occurs when a party first has right of claim to the property by virtue of which title is finally vested. *Id.*

 Byron states that the stock at issue was his separate property because he produced clear and convincing evidence that it was transferred to him by gift from Mr. Rusk. A gift is defined as a transfer of property made voluntarily and gratuitously, without consideration. *Ellebracht*, 735 S.W.2d at 659. The burden of proving a gift is on the party claiming the gift was made. *Id.* One controlling factor is the donative intent of the grantor at the time of the conveyance. *Id.* A conveyance from a parent to a child can give rise to a presumption of gift. *Id.*

 Here, the RMS stock was undisputedly transferred to Byron from his father, Mr. Rusk, giving rise to the presumption of gift. *See id.* Byron and Mr. Rusk, respectively, testified that no consideration was exchanged when Mr. Rusk delivered the 1,000 shares of stock to Byron after the marriage. This testimony was not disputed or controverted by Sheila.[3] Mr. Rusk testified that he never took an active role in the operation of RMS, also undisputed. There was no evidence that Mr.

---

**3.** Although the trial court questioned the credibility of some testimony, even granting due deference to the fact trier's better van-

tage, we cannot ignore undisputed evidence and otherwise corroborated proof.

Rusk received any income from RMS, undisputed. In fact, the only evidence in the record indicates that Byron began operating and received all the income from RMS since its corporate inception in 1984, five years prior to Byron's marriage to Sheila. Further, there is no evidence in the record to suggest that the ownership of RMS was acquired by the work, efforts or labor of the spouses after their marriage. *See Norris v. Vaughan*, 152 Tex. 491, 260 S.W.2d 676, 682 (1953). Nor was there any evidence of any monetary consideration actually paid by Byron or Sheila for the RMS stock after their marriage. Similarly, neither Sheila nor Byron ever claimed that they intended community ownership of RMS. The only evidence in the record to support the trial court's finding is the share certificate's pre-printed recitation, stating "For value received I [Mr. Rusk] hereby sell, assign, and transfer unto Byron W. Rusk one thousand shares represented by the within certificate...." No evidence of actual consideration is presented. In other words, other than this unsupported fictional recital,[4] there is no testimonial evidence or any other kind of documentary evidence, such as the corporate books, checks or receipts, that demonstrate in any fashion actual consideration. The stock certificate itself is adorned in fanciful Old English script, reminiscent of the 19th Century, and affords neither space for stating the instrument is a gift nor an appropriate blank for consideration. The flowery scripted certificate looks much like one would expect at the beginning of a Grimm's Fairy Tale: *"ONCE UPON A TIME."* The instrument is facially deficient and totally lacking any statement of actual consideration. The obvious purpose of this instrument is to assign and transfer the stock from one to another, not record the purposes or intent of the parties as argued by Sheila. From all appearances and under *all* the evidence, there was in fact no "value received." Undisputed evidence in the record is not subject to a trial judge's gratuitous finding on credibility.[5] Contrary to the dissent, most of the evidence supporting our conclusion is undisputed and even comes from Sheila. She admitted knowing of no consideration paid by Byron and stipulated the very property and buildings where RMS was located, 1759 Westheimer, were the separate property of Byron, acquired before marriage. Further testimony by Sheila was excluded by the trial court's erroneous ruling stopping further cross-examination on the intent and further factors surrounding the stock transfer.[6] It was further

---

4. The recital of "value received" without elucidation, would necessarily evoke parol evidence to determine what value, if any, was actually received which is, of course, the very issue at bar. *Friendswood Development Co. v. McDade & Co.*, 926 S.W.2d 280 (Tex.1996).

5. Customarily, the trial judge's rather vague and skimpy findings of fact and conclusions of law here, would have been prepared by Sheila's counsel. Clearly, the fact finder judges the credibility of witnesses. The gratuitous growing practice of the bar to present and have the judge sign findings stating a witness such as Bryon is not credible and that a distinguished 30–year member of the bar is not credible because he has a financial interest ($5,000 loan) are themselves, if not suspect, certainly not in the best interest of professionalism. Most of the underlying facts here are not is dispute, only the amount of reimbursements and the donative intent of the stock were truly contested. The inventory and appraisement furnishes corroboration of

almost all of the property characterization. The actual stock certificate, objectively viewed, is scant evidence of anything but a transfer, neither gift, nor remunerated. Therefore, we do not "set aside" the trial court's findings of credibility but, indeed, as the law requires on a factual sufficiency issue, review all the evidence, giving *due* deference to fact finder. It is also perhaps noteworthy that the trial court admonished Byron, at the request of Sheila's counsel, after his first question and answer. The judge implicitly threatened Byron with jail, we assume good naturedly, suggesting testifying was like the game monopoly: You get a card that says you do not go pass go. Go directly to jail. The judge similarly indicated her higher interest in Byron's attitude rather than his actual testimony.

6. Counsel for Sheila objected under the "parol evidence rule" which the trial court sustained even though the critical issues of intent

undisputed that Byron was previously married and had a child by that marriage. He had accumulated considerable separate property and was also a beneficiary of a trust set up by his father and deceased mother.[7] The overwhelming evidence shows a gift was made and Byron's claim arose before marriage. Although the delivery of the stock certificate occurred a few weeks after the marriage in 1989, the record shows that all indicia of ownership followed the inception of the business in 1984, five years earlier. Indeed, Byron's "right or claim" originated well before coverture. The only possible inference of actual consideration under the evidence is Byron's own pre-marriage work, toil, and effort.

While the certificate recital is some evidence to support the trial court's finding of the stock as community, considering all the evidence in the record bearing on this issue, we conclude that the trial court's characterization of the RMS stock as community property is so against the great weight and preponderance of the evidence as to be manifestly unjust. This conclusion is not lightly entertained, but the record by clear and convincing evidence overwhelmingly indicates: (1) the expressed intent of the parties favors only a separate property conclusion; (2) the stock was acquired by gift; (3) the presumption of gift was not overcome; (4) no consideration was paid; (5) the stock was not acquired by the work, effort or labor of the spouses; (6) the right or claim to the stock existed before marriage; (7) the inception of title was before marriage; and (8) the finding of community property, under this record, is manifestly unjust. *See Jensen,* 665 S.W.2d at 109; *Norris,* 260 S.W.2d at 682; *Bahr,* 980 S.W.2d at 728; *Scott,* 973 S.W.2d at 695; *Ellebracht,* 735

S.W.2d at 662; *see also* TEX. CONST. art. XVI, § 15 (amended 1987). If the trial court mischaracterizes separate property as community property, the property does not get divided as part of the community estate. *Robles,* 965 S.W.2d at 621. If the mischaracterization is harmful, as here, then we must remand the entire community estate to the trial court for a just and right division of the properly characterized community property. *See id.* Byron's first issue is sustained.

*Appointment of a Receiver*

During final argument, for the first time, Sheila's attorney requested that the trial court appoint a receiver over certain separate and community assets. Following its hearing on entry of the Final Decree of Divorce and Judgment, the trial court placed the following property in *custodia legis:*

PROPERTY SUBJECT TO RECEIVERSHIP

REAL PROPERTY

- 12311 Queensbury, Houston, Texas, being lot 62, Blk 2, replat, Memorial Hollow # 5, Harris County, Texas.

- 7000 Synott, Houston, Texas, being the South 120 feet, in the West 160 feet of unrestricted Reserve "D,"of Catalina Village, a subdivision of Harris County, Texas, according to the map or plat thereof. Recorded in volume 284, page 69, of the Harris County Map Records.

- 1759 Westheimer and 2605 Woodhead, Houston, Texas, being lots 3, 4, 5 and 6 of Block 1 of Winlow Place, an addition in Harris County, Texas, according to the map or plat thereof.

---

and consideration were clearly before the court and the instrument was obviously deficient to indicate intent or actual consideration. *Cf. Miller v. Kendall,* 804 S.W.2d 933, 940 (Tex.App.-Houston [1 st Dist.] 1990, no writ).

7. The dissent's statement Byron lacked resources is notable based in part on Mr. Rusk's (incredible) testimony concerning Byron's financial difficulties. The greatest irony, however, is Sheila's counsel's question in trial suggesting the stock transfer was perhaps a wedding *gift* to the community.

Recorded in volume 6, page 46 of the Map Records of Harris County, Texas, which is the pre-marriage separate property of Byron Walter Rusk.

- 13166 Trail Hollow, Houston, Texas, being Lot 8, Block MM, Georgetown Townhomes, being the pre-marriage separate property of Byron Walter Rusk.

PERSONAL PROPERTY

- West University Bank, Houston, Texas, account
- Northwestern Mutual policy
- Southwestern Life Ins. Co. policy
- Provident Mutual Life policy
- Connecticut Mutual Life policy for $100,000 on life of Byron Rusk
- Northwestern Mutual Life policy for $100,000 on life of Byron Rusk
- all shares of stock in Westheimer–Lanier Services, Inc. d/b/a RMS Automotive
- 1990 BMW driven by Sheila Rusk
- all vehicles held by Byron Rusk

In his several issues, Byron complains that there were no pleadings or other notice that a receivership was to be requested or even considered by the trial court until final argument; no claim had ever been suggested that Sheila would seek a receivership over any property. Byron contends that the trial court erred in appointing a receiver over any property without first meeting the mandatory statutory requirement of showing that the property was in jeopardy of being lost, removed, or materially injured. Byron relies, in part, on section 64.001 of the Civil Practice and Remedies Code. See TEX. CIV. PRAC. & REM. CODE ANN. § 64.001 (Vernon 1997).

We address in order, the legal requirements of receivership in a final divorce decree setting, notice requirements, and pleadings here presented.

■ Receivership is an extraordinarily harsh remedy and one that courts are particularly loathe to utilize. *Independent*

*American Savings Assoc. v. Preston 117 Joint Venture,* 753 S.W.2d 749, 750 (Tex. App.-Dallas 1988, no writ). "In recognition of the fact that appointment of a receiver without notice is one of the most drastic actions known to law or equity and should be exercised with extreme caution and only where great emergency or imperative necessity requires it, our courts have uniformly been reluctant to grant such harsh relief." *Id.; see also Readhimer v. Readhimer,* 728 S.W.2d 872, 873 (Tex. App.—Houston [1st Dist.] 1987, no writ).

■ Judicial seizure and court management of any asset should be a last resort. This is emphatically true when dealing with the separate property of a spouse. As noted, separate property is constitutionally protected. Even an equitable lien, ungoverned by statute, may be narrowly imposed on separate (homestead) property only to secure the reimbursement for community improvements made to *that* property. *See Heggen v. Pemelton,* 836 S.W.2d 145, 146 (Tex.1992) (emphasis added). We find no Texas authority allowing the imposition of a receiver upon separate property in the final division of assets. We note the Dallas Court of Appeals somewhat reluctantly allowed a receivership in a *temporary* order of a "many chaptered," contemptuous divorce. *See Gunther v. Gunther,* 283 S.W.2d 826, 828 (Tex.Civ.App.-Dallas 1955, writ dism'd). The statutory underpinnings of temporary orders do not pertain here.

■ Section 7.001 of the Family Code grants a trial court broad authority to divide *marital property* in a manner it deems just and right upon the dissolution of marriage. *Vannerson v. Vannerson,* 857 S.W.2d 659, 673 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (emphasis added); *Young v. Young,* 765 S.W.2d 440, 444 (Tex.App.-Dallas 1988, no writ); *see also* TEX. FAM.CODE ANN. § 7.001 (Vernon 1998). That broad authority sometimes includes the power to enlist the aid of a receiver to effectuate the trial court's or-

ders and judgments. *Vannerson,* 857 S.W.2d at 673; *Young,* 765 S.W.2d at 444. The appointment of a receiver may be left to the sound discretion of the trial court. *Id.; Young,* 765 S.W.2d at 444. These authorities, however, do not deal with separate property, and the underlying statutory justification is noteworthy. The Texas Family Code's broad grant of discretion, concerning a final property division, relates to *marital property* held or claimed by the spouses and does not extend to the constitutionally-protected class of separate property, nor to the appointment of receivers over such property. *See* TEX. FAM. CODE ANN. § 7.001 (Vernon 1998) (emphasis added); *see also* TEX. CONST. art. XVI, § 15 (amended 1987); *Johnson v. Johnson,* 804 S.W.2d 296, 299 (Tex.App.-Houston [1st Dist.] 1991, no writ) ("the only 'estate of the parties' subject to the trial court's division is the community estate.'" *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 141 (Tex.1977)). The trial court has no inherent or other authority to divide separate property, only non-separate or marital property. We must also cautiously view the case law development, indicating a legislative grant of discretion in division of property *vis a vis* the more specific legislative mandates for receiverships. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 64.001 (Vernon 1997); *see also* note 10, *infra.*

The underlying authority [8] for appointment of a receiver in the final divorce decree setting finds support from a 1960 Supreme Court case. There the court held that the trial court has a duty to initially determine if the parties' *community* property is subject to partition in kind. *Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299, 303 (1960) (emphasis added). If the court determines that it is, then it shall equitably divide the community property between the parties. *Id.* If it is not subject to partition in kind, the trial court can appoint a receiver and order so much of the property as is incapable of partition to be sold and the proceeds divided between the parties in such portions as, in the discretion of the court, may be a just, fair and equitable partition, having in mind the rights of the parties and the children. *Id.* Here, the parties' community assets (marital property) were subject to an in kind distribution.[9] Consequently, we hold that the trial court exceeded its authority and abused its discretion in appointing a receiver in this case even over community assets.[10] *See id.*

Similarly, the principle authorities cited, *Vannerson* and *Young,* presuppose a trial court division of marital or community property based on the trial court's authority under section 7.001 of the Family Code. As we already noted, the trial court cannot divide separate property and it must follow

8. The old red Texas Jurisprudence books seem to be the original authority!

9. Because of our disposition, we need not fully engage the dissent's assertion the property is not subject to in kind division. A review of the property placed in receivership reveals otherwise.

10. Although several courts of this state have held that section 64.001 of the Civil Practice & Remedies Code is not applicable to divorce proceedings, the *better practice* would be for trial courts to adhere to that section when appointing receivers. *See Vannerson,* 857 S.W.2d at 673; *Young,* 765 S.W.2d at 444. Section 64.001 requires that a receiver may be appointed by the trial court only if it finds that the property or fund is "in danger of being lost, removed, or materially injured." *See Readhimer,* 728 S.W.2d at 873. In this

case, no such finding was entered by the trial court. We also note that creditors are effected by virtue of their prior lien positions on some properties. The dissent notwithstanding, we are not holding section 64.001 applicable to division of the community estate because we are bound by *Hailey, supra.* In our view, *Hailey* should be limited to its narrow holding when dealing with community property that is not divisible in kind, given the express receivership statute ordained by the legislature and the trial courts authority to divide only the marital estate. To reiterate, we are not dealing with a temporary order situation but final judgment following a trial. When dealing with *separate property,* a trail court could avail itself of the receivership statute, when applicable.

that the court's inherent power to otherwise appoint receivers over separate property is itself restrained by express statutory constraint. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.001 (Vernon 1997).

The dissent in note 5 cites *Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex.1992), indicating that the Supreme Court upheld "such action" as the trial court below, "appoint[ing] a receiver and impos[ing] an equitable lien." on separate property. *Heggen* forbade the imposition even of an equitable lien on separate homestead property when the purpose was not to secure the other spouse's right of reimbursement (and did not address the receivership issue). *Heggen*, however, is based upon the constitutional protection of the homestead. It is significant here that the trial court's written findings regarding property division, contained in its judgment, clearly state that a $71,275.46 sum is "owelty," [11] not reimbursement for community sums expended upon separate property. Other sums denoted for reimbursement were secured by liens upon Byron's separate property, which accumulated the total of $150,000. While the trial court announced from the bench a finding of $150,000 in owelty, the actual judgment, which was the subject of a long hearing, included not only owelty, but "recoupment and reimbursement." The trial court's written findings in its judgment relative to property division clearly denotes, however, the three reimbursement items: (1) Northwest Mutual Policy; (2) 13166 Trail Hollow; and (3) Westheimer and Woodhead properties. The property placed in receivership however, includes all of Byron's separate and community property, the majority of which have no reimbursements attendant. We do not dispute the authorities cited in *Heggen* and elsewhere allowing an equitable lien against separate property for the reimbursement of the community for sums expended for *improvement to that property*. Here, however, the trial court, according to its findings, appointed a receiver: "to the [sic] effect a proper disposition of the assets and liabilities of the parties." This receivership is not even limited to the onerous imposition of a deed of trust upon separate property to secure reimbursement. *See Smith v. Smith*, 715 S.W.2d 154, 157–58 (Tex.App.-Texarkana 1986, no writ) (allowing equitable lien on separate property for reimbursement but not deed of trust); *Duke v. Duke*, 605 S.W.2d 408, 412 (Tex.Civ.App.-El Paso 1980, writ dism'd) (disallowing a deed of trust on separate property); *but see Mullins v. Mullins*, 785 S.W.2d 5, 11 (Tex.App.-Fort Worth 1990, no writ) (allowing deed of trust "merely formalizing equitable lien" for reimbursement).

██ The dissent also claims there was no divestiture of title to Byron's separate property. While arguably literally true, ownership and possession of property also extends to the use and enjoyment of that property. *Duke*, 605 S.W.2d at 412. In other words, even if a lien or receivership over separate property is never enforced or foreclosed, it still divests the owner of some title in his property, for it is unmarketable while under such encumbrance. *See id.* At the entry of judgment hearing even the receiver had not seen this situation before, calling it "unusual." The receiver likewise expressed the opinion that the trial court would tell her what property to sell. The receiver further stated that if Byron did not pay the monetary judgment awarded to Sheila, his property would be sold.

██ Turning to the issue concerning notice, Rule 695 provides that "[e]xcept where otherwise provided by statute, no receiver shall be appointed without notice to take charge of property fixed and im-

11. "Owelty" is simply a scheme for the equalization of awards of *community property* in divorce cases. *See Massey v. Massey*, 807 S.W.2d 391, (Tex.App.-Houston [1 st Dist.] 1991). The term is also used in Oil and Gas cases similarly describing a partition into shares of unequal value (and imposing a lien for the difference.) *See Mapco, Inc. v. Carter* 817 S.W.2d 686, (Tex.1991)

movable." [12] Tex.R. Civ. P. 695. The rule also provides that "[w]hen an application for appointment of a receiver to take possession of property of this type is filed, the judge or court shall set the same down for hearing and notice shall be given to the adverse party by serving notice thereof not less than three days prior to such hearing." *Id.* In this case, neither Sheila nor the trial court complied with the notice provision provided in Rule 695. *See Continental Homes Co. v. Hilltown Prop. Owners Assoc., Inc.,* 529 S.W.2d 293, 295–96 (Tex.Civ.App.-Fort Worth 1975, no writ). We would hold that Rule 695 is applicable to the appointment of receivers in marriage dissolution cases involving fixed and immovable property. *See* Tex.R. Civ. P. 695. Otherwise, every divorce proceeding could give rise to un-noticed, non-pled, last-second arguments for appointment of a receiver, as occurred in this case. However, although the new more expansive rules of appellate procedure may include this issue under "Issue No. 2," a close review of the record does not reveal this matter was properly raised before the trial judge. *See* Tex.R.App. P. 33.1(a)(1)(A).

■ Compounding the fracture, Sheila failed to plead for a receivership until the final argument by her distinguished lawyer. A trail amendment was hand-written by counsel, filed and accepted by the trial court. The procedural history of this case was unusually quiet, with no contested preliminary hearings, no injunctions, no receiverships, and no discovery fights. The parties even agreed on child custody. It was only money that finally brought them to the courthouse. So, apparently, based upon a gratuitous remark by Byron at trial, "turning the community property upside down," [13] did Sheila at the last moment discern the necessity of this judicial seizure. While it is

true that courts should liberally allow trial, even post-trial, pleading amendments, *see Whole Foods Market Southwest v. Tijerina,* 979 S.W.2d 768, 775–76 (Tex.App.-Houston [14th Dist.] 1998 writ denied), there are limits. An amendment prejudicial on its face is characterized by the following: (1) assertion of a new substantive matter that reshapes the nature of the trial itself, (2) a party could not have anticipated it in light of the prior development of the case, and (3) the opposing party's presentation of the case would be detrimentally affected. *See Smith Detective Agency & Nightwatch Serv. Inc. v. Stanley Smith Sec., Inc.,* 938 S.W.2d 743, 748–49 (Tex.App.-Dallas 1996, writ denied). Because the receivership in this case may divest Byron of at least the use of his separate property, a wholly unanticipated event, patently detrimental, the amendment is facially prejudicial and an abuse of the trial court's discretion to allow.

*Reimbursement Claim*

■ As the final matter we will address, Byron contends that the trial court erred in computing the amount of Sheila's reimbursement claim, relative to mortgage payments made during the marriage on one of Byron's separate properties, the Trail Hollow town house.

■ A claim for reimbursement of funds expended by an estate for improvements to another estate is to be measured by the enhancement value to the benefitted estate. *Anderson v. Gilliland,* 684 S.W.2d 673, 675 (Tex.1985); *Kimsey v. Kimsey,* 965 S.W.2d 690, 700 (Tex.App.-El Paso 1998, pet. denied). This measurement is to be applied whether the claim for reimbursement is based upon funds expended for payment of a purchase money debt or for a capital improvement to an-

---

**12.** Real estate is "fixed and immovable property" within the meaning of Rule 695. *Continental Homes Co. v. Hilltown Prop. Owners Assoc., Inc.,* 529 S.W.2d 293, 296 (Tex.Civ. App.-Fort Worth 1975, no writ).

**13.** The phrase was injected by Sheila's counsel right before final argument. Then, using counsel's own words he boot strapped into the unpled, unnoticed argument for a general receivership.

other estate. *Penick v. Penick*, 783 S.W.2d 194, 197 (Tex.1988). Off-setting benefits to the paying estate must be considered. *Id.* The party claiming the right of reimbursement has the burden of proof. *Jensen*, 665 S.W.2d at 110; *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex.1982); *Kimsey*, 965 S.W.2d at 700.

As part of its judgment, the trial court awarded $37,628.16 to Sheila for her reimbursement claim on the Trail Hollow town house. Sheila testified that during the term of her marriage to Byron, ninety-six payments in the monthly sum of $391.96 were made on the Trail Hollow town house. She testified that the total amount of community funds expended on the Trail Hollow town house was $37,628.16. Byron argues that in awarding that amount to Sheila for reimbursement, the trial court failed to consider significant offsets, such as the fact that the parties resided in the town house, rent-free for a period following their marriage, their subsequent receipt of rental income from that property, tax breaks, and depreciation. On remand of this matter to the trial court for a new trial and division of community assets, we are confident the trial court will take into consideration the off-setting community benefits in determining an award to Sheila on her reimbursement claim. *See Penick*, 783 S.W.2d at 197. While the dissent maintains the trial court did consider the offsetting benefits to the community, the trial court's written findings concerning its division of property shows the contrary.

The judgment is reversed and remanded to the trial court for a new trial on the characterization and division of the parties' separate and community property. The trial court's order appointing a receiver is vacated without prejudice to possible rehearing not inconsistent with this opinion.

FOWLER, Justice, dissenting.

I respectfully dissent. I would affirm the trial court's judgment because (1) Byron failed to satisfy his burden of proof in establishing that the corporate stock is his separate property, (2) the trial court acted within its broad discretion in appointing a receiver, (3) the trial court's judgment does not divest Byron of any separate property, and (4) Sheila's reimbursement claim is supported by the evidence.

I discuss first the evidence in the record, and the trial court's findings about the evidence, concerning the characterization of the RMS stock. The majority holds that the trial court's characterization of the RMS stock as community property is "so against the great weight and preponderance of the evidence as to be manifestly unjust." This holding is based solely on the testimonies of interested witnesses, Byron and Mr. Rusk.

### The Finding Of Community Property

Byron and Mr. Rusk attempted to show that Byron acquired the stock by gift or, alternatively, as the beneficiary of a resulting trust. They each testified that no consideration was exchanged when Mr. Rusk transferred the 1,000 shares of RMS stock to Byron after his marriage to Sheila. In concluding that this testimony established the stock is Byron's separate property, the majority states that "this testimony was not disputed or controverted by Sheila." It contends that "we cannot ignore undisputed testimony." However, the majority's holding ignores this Court's standard of review and misallocates the burden of proof.

The trial court's findings of fact have the same force and dignity as a jury verdict. *Ellebracht v. Ellebracht*, 735 S.W.2d 658, 662 (Tex.App.-Austin 1987, no writ). If supported by some competent evidence, they will not be disturbed on appeal unless they are so against the overwhelming weight of the evidence as to be clearly and manifestly wrong. *Id.* A court of appeals may not pass upon the credibility of the witnesses or substitute its findings for those made by the trial judge, nor may it substitute its judgment for that of the trier of fact, regardless of whether it may have

reached a different conclusion after reviewing the evidence. *Id.* The trial court is the sole arbitrator of the credibility of the witnesses and the weight to be accorded their testimony. *Id.*

In his brief, Byron argues that the RMS stock was his separate property because he produced clear and convincing evidence that it was transferred to him from Mr. Rusk by (1) gift, or (2) as the beneficiary of a resulting trust. I first consider Byron's claim that the property was transferred as a gift.

A gift is defined as a transfer of property made voluntarily and gratuitously, without consideration. *Ellebracht,* 735 S.W.2d at 659. The burden of proving a gift is on the party claiming the gift was made. *Id.* The majority contends that the testimonial evidence in this case was sufficient to find that Byron satisfied his burden of proof to establish that the RMS stock was his separate property because Sheila failed to dispute or controvert Byron's evidence. That contention misallocates the burden of proof. Because the stock was acquired after the marriage, the law presumes it community property. *See* TEX. FAM.CODE ANN. § 3.002 (Vernon 1998). Therefore, Sheila did not have the burden to prove the stock was community property; rather, Byron had the burden to prove by "clear and convincing evidence"[1] that the stock was his separate property. *See* TEX. FAM.CODE ANN. § 3.003(b) (Vernon 1998).

In determining whether a party has met its burden on its claim of a gift, one controlling factor is the donative intent of the grantor at the time of the conveyance. *Id.* It has been held that a conveyance from a parent to a child can give rise to a presumption of gift. *Id.* At the same time, however, exchange of consideration precludes a gift. *Id.* " 'Gift' and 'onerous consideration' are exact antitheses. The idea of their [co-existence] involves a paradox." *Ellebracht,* 735 S.W.2d at 659. A recital of onerous consideration in a deed "negatives the idea of a gift." *Id.*

As the majority notes, Byron and Mr. Rusk testified that no consideration was exchanged when Mr. Rusk transferred the 1,000 shares of stock to Byron. However, in a marriage dissolution action, "where the only evidence produced by a party [to establish the character of property] is such party's own testimony, such testimony of an interested witness only raises a fact issue for the finder of fact." *Gonzalez v. Guajardo de Gonzalez,* 541 S.W.2d 865, 868 (Tex.Civ.App.-Waco 1976, no writ). "This is true though the testimony not be contradicted." *Id.* The trial judge is authorized by law to reject this testimony if it is not credible and therefore to accord it no weight. *See id.*

Here, we cannot rely on the testimony of Byron and Mr. Rusk because, in its findings of fact, the trial court found that neither Byron nor Mr. Rusk were credible witnesses. That finding is not eligible for appellate review.[2] *See Ellebracht,* 735 S.W.2d at 662.

---

1. The clear and convincing standard of proof falls between the preponderance standard applied in ordinary civil proceedings and the reasonable doubt standard applied in criminal proceedings. *Trimble v. Texas Dep't of Protective & Regulatory Serv.,* 981 S.W.2d 211, 217 (Tex.App.-Houston [14th Dist.] 1998, no pet.). "Clear and convincing evidence" is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the matter sought to be established. *Id.*

2. I cannot conceive of a case in which an appellate court could set aside a trial court's finding that a witness was not credible. Our judicial system and our system of appellate review are based on the principle that the trier of fact is in a unique position to judge credibility. *See Ellebracht,* 735 S.W.2d at 662. If a trial court found a witness was not credible, as here, an appellate court would have to rely on other parts of the record-i.e., other witnesses, documents, photographs-rather than on that witness's testimony. Of course, here, the documentary evidence supports the trial judge's judgment, so there is nothing else for an appellate court to rely on.

In addition, the record shows that the stock was valued at $175,000, and the stock certificate expressly recites that the stock was indeed *sold* to Byron. This is some evidence that the stock was exchanged for consideration, supporting the trial judge's finding that the RMS stock was community property. *See id.* at 659. Moreover, since the trial judge, who was the sole arbiter of the witnesses' credibility, found that Byron and Mr. Rusk were not credible,[3] no evidence remains to contradict the judge's findings. Thus, I would hold that Byron failed to meet his burden of proving that the stock was transferred to him by gift. *See id.*

The question then becomes whether Byron proved the existence of a "resulting trust." Clearly, he did not. When title to property is taken in the name of someone other than the person who advances the purchase price, a "resulting trust" is created in favor of the payor. *Tricentrol Oil Trading, Inc. v. Annesley*, 809 S.W.2d 218, 220 (Tex.1991). It is an "intent trust" employed when trust property had been used for a special purpose which has terminated or become frustrated so that the law implies a trust for the equitable owner of the property. *Id.* Generally, however, the law is suspicious of resulting trusts, and, consequently, a heavy burden is placed upon the party attempting to establish the existence of one. *Savell v. Savell*, 837 S.W.2d 836, 839 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

There is no evidence in the record of this matter to support a finding that Byron provided any financing to form RMS cor-

poration in 1984. Indeed, the evidence supports the converse conclusion. Mr. Rusk testified that the stock was placed in his name when the corporation was formed because Byron lacked financial resources. To the extent that Byron's and Mr. Rusk's respective testimonies indicated that Byron owned the stock from its inception, it was within the province of the trial court to reject that testimony. *See Ellebracht*, 735 S.W.2d at 662. I would hold that Byron failed to meet his burden of establishing a "resulting trust." *See Savell*, 837 S.W.2d at 839.

Accordingly, under this Court's applicable standard of review, I would affirm the trial court's finding that the RMS stock is community property by holding that Byron failed to meet his burden of proving by "clear and convincing evidence" that the stock is his separate property. *See Robles v. Robles*, 965 S.W.2d 605, 614 (Tex.App.-Houston [1st Dist.] 1998, pet. denied); *see also In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951).

### The Receivership

Next, the majority holds that the trial court exceeded its discretion in appointing a receiver in this case because (1) the appointment of the receiver is governed by section 64.001 of the Civil Practice and Remedies Code, but did not meet the requisites of that section, (2) a receiver may not be appointed over separate property, and (3) Sheila failed to comply with the notice provision of Rule of Civil Procedure 695.

---

**3.** I also feel compelled to note my strong disagreement with the majority's statement in footnote 5 that the trial judge threatened to put Byron in jail. The judge sustained an objection raised by Sheila's counsel that Byron gave a non-responsive answer. When the judge was requested to instruct the witness to answer only the question asked, she instructed him as follows:

"Okay. You have to listen to the question and answer what he ask [sic]; not what you think you heard. And I make it an analysis [sic] to monopoly. If you throw the dice

and get six, can you move five spots? You couldn't move seven either. If you draw a card that says, "You may pasco [sic], go directly to jail," what do you do? You go to jail.

All right. We have rules very similar to monopoly here and one of those is when an attorney ask [sic] you a question, listen very carefully. What we do in a courtroom setting is not natural. It's not a conversation type mode where you and I would sit down over a cup of coffee end table. It's a question and answer."

Section 7.001 of the Family Code grants a trial court broad authority to divide marital property in a manner it deems just and right upon the dissolution of marriage. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998); *Vannerson v. Vannerson,* 857 S.W.2d 659, 673 (Tex.App.-Houston [1st Dist.] 1993, writ denied); *Young v. Young,* 765 S.W.2d 440, 444 (Tex.App.-Dallas 1988, no writ). That broad authority includes the power to enlist the aid of a receiver to effectuate the trial court's orders and judgments. *Walston v. Walston,* 971 S.W.2d 687, 692–93 (Tex.App.-Waco 1998, pet. denied); *Vannerson,* 857 S.W.2d at 673; *Young,* 765 S.W.2d at 444. The appointment of a receiver is an equitable action, left to the sound discretion of the trial court. *Vannerson,* 857 S.W.2d at 673; *Young,* 765 S.W.2d at 444.

Byron contends—and the majority agrees—that section 64.001 of the Civil Practice and Remedies Code governs the appointment of receivers in marriage dissolution cases. But, when third parties or companies do not have an interest in the property subject to a receivership, Texas courts have not applied the receivership rules contained in section 64.001 to marriage dissolution cases; rather, the courts have held that section 7.001 of the Family Code governs. *See Walston,* 971 S.W.2d at 692–693 (holding that section 7.001's predecessor authorizes a trial court to appoint a receiver for selling property as necessary to carry out the trial court's orders and judgments); *Vannerson,* 857 S.W.2d at 673 (holding that section 64.001 of the Civil Practice and Remedies Code does not govern the appointment of a receiver over property when it is divided upon divorce, the predecessor of section 7.001 of the Family Code controls); *Young,* 765 S.W.2d at 444 (holding that section 64.001 of the Civil Practice and Remedies Code does not govern the appointment of a receiver over property when it is divided upon divorce, the predecessor of section 7.001 of the Family Code controls); *North Side Bank v. Wachendorfer,* 585 S.W.2d 789, 792 (Tex.Civ.App.-Houston [1st Dist.] 1979, no writ) (holding that under the statutes governing family courts, a family court has broad power to appoint a receiver where it is necessary, but that this power is limited by section 64.001 of the Civil Practice and Remedies Code when a receiver is sought by the owner of marital property against a third party creditor); *Elliott v. Elliott,* 422 S.W.2d 757, 758–759 (Tex.Civ.App.-Fort Worth 1967, writ dism'd w.o.j.) (stating that, under the statutory provisions governing family courts, where a court has full knowledge concerning the parties and their property, it may appoint a receiver, even without any application therefor, and without notice or hearing). Thus, in this case, which involves only property of the parties and does not involve the interests of creditors or mortgagors, section 7.001 of the Family Code governs.

The Supreme Court, in interpreting the statute which preceded section 7.001 of the Family Code, held that in making a "just and right" division, the trial court should first decide whether the parties' community property is "subject to partition in kind" and if it is not, then the property may be sold by a receiver. *Walston,* 971 S.W.2d at 693 (citing *Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299, 303 (1960)). In determining if property is subject to division in kind the trial court should consider the "nature and type of particular property involved and the relative conditions, circumstances, capabilities and experience of the parties." *Id.* These factors are also considered when the trial court must decide whether to divide community property by awarding a money judgment to one party and community assets to the other party, instead of dividing the community property in kind. *Id.; see also Finch v. Finch,* 825 S.W.2d 218, 224 (Tex.App.-Houston [1st Dist.] 1992, no writ); *Hanson v. Hanson,* 672 S.W.2d 274, 278 (Tex.App.-Houston [14th Dist.] 1984, writ dism'd).

In this case, the trial court did not make an in kind division of the parties' most

valuable community assets.[4] Instead, it awarded a cash judgment of $150,000 to Sheila as equitable owelty, recoupment, and reimbursement, and it awarded the bulk of the tangible community assets to Byron. Thus, the trial court possessed authority to appoint a receiver. *See id.; Hailey,* 331 S.W.2d at 302–03. To effectuate its judgment, the trial court appointed a receiver to take charge of certain tangible properties in possession or subject to the control of Byron. The trial court ordered that the property in receivership shall remain in the custody of the court until Sheila's equitable owelty, recoupment and reimbursement is paid by Byron. I believe the record supports the trial court's decision. Byron testified that the financial condition of RMS was in "bad shape." Byron testified that one of RMS's locations was losing money and that it was unable to timely make its bank note payments. Byron also testified that his separate estate was "seriously in trouble" and that the community estate was "upside down." The trial court's decision to appoint a receiver reflects its concern that Byron would not comply with its order and judgment.

It is true that the trial court's receivership order and equitable lien affects separate property owned by Byron. However, contrary to the majority's holding, the trial court's action in this regard does not *divest* Byron of any separate property.[5]

Trial courts possess authority to appoint receivers over separate property in marriage dissolution cases. *Gunther v. Gunther,* 283 S.W.2d 826, 827–28 (Tex.Civ. App.-Dallas 1955, writ dism'd); *Hursey v. Hursey,* 147 S.W.2d 968, 970 (Tex.Civ. App.-Dallas 1940, no writ). Trial courts are also vested with authority to impose equitable liens on one spouse's separate

property to secure the other spouse's right of reimbursement for community improvements to that property. *Heggen v. Pemelton,* 836 S.W.2d 145, 146 (Tex.1992); *Kimsey v. Kimsey,* 965 S.W.2d 690, 697–98 (Tex.App.-El Paso 1998, pet. denied); *Magill v. Magill,* 816 S.W.2d 530, 535 (Tex. App.-Houston [1st Dist.] 1991, writ denied); *Cook v. Cook,* 665 S.W.2d 161, 165 (Tex.App.-Fort Worth 1983, writ ref'd n.r.e.); *see also* note 4, *supra.*

Such orders by the trial court affecting one spouse's separate property does not, however, automatically operate as a divestiture of that property. *Magill,* 816 S.W.2d at 536; *Cook,* 665 S.W.2d at 165. While a trial court may not divest an owner of his separate property, loss of title may result if the property is ultimately sold under execution. *Id.; Cook,* 665 S.W.2d at 165. However, the divestiture by foreclosure is essentially voluntary because the owner possesses the option to prevent this action by complying with the court's order to pay. *Id.; Cook,* 665 S.W.2d at 165; *see also Kimsey,* 965 S.W.2d at 697–98. Therefore, contrary to the majority's holding, the trial court's final decree of divorce and judgment does not divest Byron of any separate property.

That leaves, finally, the notice issue. During oral argument before this court, Byron contended, for the first time, that the trial court's receivership order should be vacated because he did not receive notice of Sheila's intention to seek a receiver. Although, technically, we are not required to review this contention because it was not briefed and not raised before the trial court, I will address it because the majority chose to address the merits of the complaint. *See Montemayor v. City of San Antonio Fire Dep't,* 985 S.W.2d 549, 550–51 (Tex.App.-San Antonio 1998, pet. de-

---

**4.** The majority's conclusion that the parties' community property was "subject to an in kind distribution" is not supported by the record. *See, e.g., Walston,* 971 S.W.2d at 693.

**5.** The trial court appointed a receiver and imposed an equitable lien only over Byron's

separate property upon which Sheila was awarded a reimbursement judgment. Our Supreme Court has upheld such action. *See Heggen v. Pemelton,* 836 S.W.2d 145, 146 (Tex.1992).

nied); *Francis v. Cogdell*, 803 S.W.2d 868, 871 (Tex.App.-Houston [1st Dist.] 1991, no writ); Tex.R.App. P. 38.1(h); Tex.R.App. P. 33.1(a).

The majority concludes that Sheila's failure to comply with Rule 695 dooms the trial court's order appointing a receiver. *See* Tex.R. Civ. P. 695. This holding is in contrast to a line of authority in Texas, holding that in marriage dissolution cases, it is well-settled that a court has broad powers and, upon proper showing, a receiver may be appointed with or without notice or application. *See Gunther*, 283 S.W.2d at 828; *Hursey*, 147 S.W.2d at 970; *Kinsey v. Kinsey*, 77 S.W.2d 881, 882 (Tex. Civ.App.-Dallas 1934, no writ); *Crawford v. Crawford*, 163 S.W. 115, 116 (Tex.Civ. App.-Texarkana 1913, no writ).

That notwithstanding, the record in this case shows that before the conclusion of trial, Sheila's counsel sought leave from the trial court to file a trial amendment to provide notice to Byron of Sheila's intention to seek a receiver. The trial court granted counsel's oral request and a trial amendment was filed in which Sheila requested the appointment of a receiver. A copy of the trial amendment was not made part of the original clerk's record filed in this case. However, this Court granted Sheila's motion to supplement the record so that the trial amendment could be considered. *See* Tex.R.App. P. 34.5(c)(3). Therefore, the trial amendment is properly before this Court, and it clearly shows that Byron had notice of Sheila's intention to seek a receiver before the receiver was appointed.

In sum, on the receivership issue, I would affirm the trial court's order appointing a receiver and imposing an equitable lien over Byron's separate property.

### The Reimbursement Claim

The next issue is the trial court's computation of the amount of Sheila's reimbursement claim, relative to mortgage payments made during the marriage on Byron's Trail Hollow town house. A claim for reimbursement of funds expended by an estate for improvements to another estate is to be measured by the enhancement value to the benefitted estate. *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex. 1985); *Kimsey*, 965 S.W.2d at 700. This measurement is to be applied whether the claim for reimbursement is based upon funds expended for payment of a purchase money debt or for a capital improvement to another estate. *Penick v. Penick*, 783 S.W.2d 194, 197 (Tex.1988). Off-setting benefits to the paying estate must be considered. *Id.* The party claiming the right of reimbursement has the burden of proof. *Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex.1984); *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex.1982); *Kimsey*, 965 S.W.2d at 700.

Reimbursement is an equitable claim. *Penick*, 783 S.W.2d at 197; *Magill*, 816 S.W.2d at 530. As such, a court of equity is bound to look at all facts and circumstances to determine what is fair, just, and equitable. *Penick*, 783 S.W.2d at 198; *Magill*, 816 S.W.2d at 535. The equitable nature of a claim for reimbursement allows for consideration of off-setting benefits. *Jensen*, 665 S.W.2d at 109; *Magill*, 816 S.W.2d at 535. However, great latitude must be accorded to the trial court in applying equitable principles to value such a claim, for it is not just a balancing of the ledgers between competing marital estates. *Penick*, 783 S.W.2d at 198; *Magill*, 816 S.W.2d at 535. The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as the discretion exercised by a trial court in making a just and proper division of the community estate. *Penick*, 783 S.W.2d at 198; *Kimsey*, 965 S.W.2d at 701.

Of the $150,000 awarded to Sheila in the trial court's final decree of divorce and judgment, $37,628.16 of that amount represented her reimbursement claim on the Trail Hollow town house. Sheila testified that during the term of her marriage to Byron, ninety-six payments in the monthly

sum of $391.96 were made on the Trail Hollow town house. She testified that the total amount of community funds expended on the Trail Hollow town house was $37,-628.16. Byron argues that in awarding that amount to Sheila for reimbursement, the trial court failed to consider significant off-sets, such as the fact that the parties resided in the town house rent-free for a period following their marriage, their subsequent receipt of rental income from the property, tax breaks, and depreciation. The trial court expressly awarded, however, "a disproportionate division of property to Sheila...." *See Robles,* 965 S.W.2d at 621. Such an award is within the trial court's discretion and, in awarding a "disproportionate division," it implicitly indicates that the court considered off-setting community benefits. *See Penick,* 783 S.W.2d at 198.

The record shows that Sheila satisfied her burden of proof in establishing her claim for reimbursement. *See Jensen,* 665 S.W.2d at 110; *Kimsey,* 965 S.W.2d at 700. I would hold that Byron failed to show that the trial court abused its discretion in awarding Sheila a reimbursement judgment. *See Penick,* 783 S.W.2d at 198.

Finally, though not addressed by the majority opinion, Byron contends that the trial court's overall, unequal division of marital property was an abuse of discretion because the error in the trial court's division was more than *de minimis.* The trial court possesses broad discretion in dividing marital property in a manner it deems just and right. *Schlueter v. Schlueter,* 975 S.W.2d 584, 589 (Tex.1998) (trial courts permitted to take many factors into consideration in making a just and right division of marital property); *Lipsey v. Lipsey,* 983 S.W.2d 345, 350 (Tex.App.-Fort Worth 1998, no pet.); *Robles,* 965 S.W.2d at 621; *see also* Tex. Fam.Code Ann. § 7.001 (Vernon 1998). The trial court also possesses the authority to order an unequal division of community property where a reasonable basis exists for doing so. *Robles,* 965 S.W.2d at 621.

The trial court's finding that such a reasonable basis existed in this case contains some support in the record. *See id.* at 622–21. No abuse of discretion has been shown. *See id.*

I would affirm the trial court's judgment. Therefore, I respectfully dissent.